## DE RUTTE *et als. v.* MULDROW *et als.*

A POWER of attorney, authorizing the agent to "superintend my real and personal estate, to make contracts, to settle outstanding debts, and generally to do all things that concern my interest in any way, real or personal whatsoever, giving my said attorney full power to use my name, to release others or bind myself, as he may deem proper and expedient, hereby making the said School-craft my general attorney and agent, and by these presents ratifying whatsoever my said attorney may do by virtue of this power," gives the agent power to execute a lease of real estate, containing a clause that the lessee "shall have the privilege of purchasing any part of said land during the continuation of this lease, at its value, in preference to any other persons."

*Billings* v. *Morrow,* (7 Cal. 171) as to construction of a power of attorney, commented on, and the rule there laid down not to be extended.

*Query:* Whether the rule laid down in that case, that "where the authority to perform specific acts is given in the power, and general words are also employed, such words are limited to the particular acts authorized," embraces a power to convey real estate.

Where a lease gives the lessee the privilege of purchasing the land during the lease, at its value, in preference to others, this privilege is as much a term of the contract, and binding on the lessor, as any other term of the instrument; and though the lessee be not bound to purchase, and the lessor's contract may amount only to a proposition, until accepted by the lessee, yet, upon his acceptance, it becomes a valid agreement.

A man may as well agree to sell property upon the condition that another will consent to buy, as upon any other condition, or absolutely. The agreement is no less a contract, because it merely provides for, or is in advance of another contract, than if it were incorporated in the ultimate contract; or, in other words, a man may as well bind himself *to make* a contract, as to bind himself *by* contract, and the first as well partakes of the nature and essentials of a valid agreement as the last.

*Laffan* v. *Naglee* (9 Cal. 662) on this point cited.

Where a lease contains such privilege in favor of the lessee to purchase, he has an equity as against his lessor to have the agreement executed.

M. had a lease, dated December, 1849, from Sutter, through his agent, S., containing a clause of purchase of the land during the lease. April, 1850, M. received a letter from Sutter, directed to S., his agent, and M., in which Sutter stated that he had sold to M. the land in dispute for $2,800, two hundred dollars of which had been paid, and the balance was to be paid in three equal payments of six hundred dollars, for which M. was to execute his notes, and reform the lease so as to relinquish his right to purchase the balance of the land leased; that M. was to have a bond for forty acres of the land, and the balance of the land he was to have at any time during the continuation of the lease, upon the payment of eight hundred dollars additional; that M. then and there executed the three notes for six hundred dollars each, and S., as the attorney of Sutter, executed and delivered to M. a bond for the forty acres,

33

and changed and reformed the lease.   M. took possession of a portion of the land on the execution of the original lease.   Prior to October 22d, 1850, M. paid the $2,800, and Sutter, by his then attorney, F., executed to M. a deed for the land in dispute.   Plaintiffs received from Sutter a deed of the land, dated May 3d, 1850, made in pursuance of an agreement between the parties, dated January 26th, 1850.   Plaintiffs also had another deed from Sutter, dated November 20th, 1850.   When plaintiffs purchased, they had notice of M.'s equity and interest in the land.   *Held,* that this letter constituted a valid agreement as to the land, and when taken in connection with the execution of the agreement by the deed of Sutter to M., by his agent, F., in April, 1850, with the possession of the premises by M., notice to plaintiffs of M.'s rights makes out an equitable title in M. sufficient to defend in ejectment by plaintiffs.

The fact that such letter had no date is not essential, either by Spanish or common law, to make the letter a perfect agreement.   The transaction being closed by F. a day or two subsequently, and the notes of M. taken, in execution of the agreement, the omission as to date could be supplied by the notes.

Where land is described in a lease as "land lying along the American fork, bounded by said fork, and running down to land owned by Mark Stewart; thence easterly and north-easterly along a slough to the north of A street, and following the bank of said slough around where the high land slopes to said American fork," etc., the true construction of this description fixes the boundary on the slough, and the words "around where the high land slopes," if they have any meaning at all, can only be applied to the bank or high ground adjoining the slough.

In this case, that portion of the land in dispute outside of the slough, being included in the deed of May 3d, 1850, from Sutter to plaintiffs, their title to such portion is prior and superior to the claim of defendants.

APPEAL from the Sixth District.

The facts appear in the opinion of the Court.   Defendants had judgment; plaintiffs appeal.

*Clark & Gass,* for Appellants.

I.   The power of attorney from Sutter to Schoolcraft confers no power to sell or convey land, and, of course, no power to covenant for such sale or conveyance.   (*Billings* v. *Morrow,* 7 Cal. 171.)

II.   The covenant in the lease, that the lessee should have the privilege of purchasing, is void for want of mutuality.   Sutter could not compel Muldrow to purchase, and hence Sutter is not bound.   If the covenant bound Sutter not to sell, and did not bind Muldrow to purchase, it took from Sutter the right of alienation, which is against the policy of the law.   (Chitty on Con. 15; 1 Par. on Con. 375–6; Story on Con. sec. 447–8; *Tucker* v. *Wood,* 12 Johns. 190; *Keep & Hale* v.

De Rutte *v.* Muldrow.

*Goodside,* Id. 397; *Dorsey* v. *Packwood,* 12 How. 126; *Benedict* v. *Lynch,* 1 Johns. Ch. 369–70; *Boucher* v. *Von Buskirk,* 2 A. K. M. 346.)

III.    The transaction, as proven by Zabriskie, shows no equity in defendants sufficient to defeat this action.    The letter referred to has no date, and a date is essential.    (*Hayes* v. *Bona,* 1 Cal. 158; *Stafford* v. *Lick,* 10 Id. 12.)    Besides, this letter contains no description of the land sold.

But it is clear that this letter was not a writing executed by Sutter, and delivered to Muldrow as evidence of a sale of land by him to Muldrow, and which the latter was to retain and rely upon as his evidence of title.    It was not within the contemplation of Sutter and Muldrow, or either of them, that the sale from the one to the other was complete, when that letter was written and directed; but it was in the contemplation of both of them that the papers which should be the evidence of the sale should be thereafter executed and delivered.    This letter was simply a written direction from Sutter to his agent, or attorney in fact, to do a certain thing.    He was informed by that letter that Sutter had made a verbal sale of certain land, mentioned in a certain lease, to Muldrow, for a certain sum of money, which was to be paid at certain stipulated periods, and directing him to reduce that verbal contract to writing.

IV.    The lease, as changed and reformed on the ninth of April, 1850, does not cover the whole of the land described in the complaint, and even if defendant's equity under the agreement of the ninth of April, 1850, would be sufficient to prevent a recovery as to so much of the land as is embraced in the bond and described in the lease, still the plaintiffs were entitled to a judgment for so much of the land in dispute as is not embraced in said bond and lease.

*Moore & Welty,* for Respondents.

I.    The clause in the lease to Muldrow, giving him the privilege of purchasing, amounts to a direct proposition from Sutter to sell any part of the premises to Muldrow, within a specified time, at what the land was worth.    This proposition, if not binding before, became so when it was accepted, in April, 1850, according to the testimony of Zabriskie. This privilege of purchasing is a covenant running with the land, and binding on all persons having notice of it.    (*Laffan* v. *Naglee,* 9 Cal. 662; *Jackson* v. *Groat,* 7 Cow. 286; 1 Powell on Mort. 125; 18

Johns. 174; 16 East. 87; 4 Kent, 473; *Martin* v. *Barker*, 5 Blackf. 232; *Hurst* v. *Rodney*, 1 Wash. C. C. 375; 6 Jay, 512; 8 Cow. 206; 3 Denio, 284; 4 Barn. & Ald. 266.)  The offer to sell being accepted, related back to the day it was made, and became a valid contract from that time.  (*Kennedy* v. *Lee*, 3 Merwall 441; *Adams* v. *Lindsell*, 1 Id. 689.)

II.  Although Schoolcaft had no power to sell under his power of attorney, still he did have power to contract for the sale of his principal's land.  Power to sell and power to contract for the sale of land are different things.  The power of attorney in this case comes within *Hunter* v. *Watson & Vance*, 12 Cal.  *Billings* v. *Morrow* (7 Cal. 171) holds that this power of attorney does not authorize Schoolcraft to convey land, but does not decide that it does not authorize him to make contracts for the sale of land.

III.  Even if Schoolcraft had no power to make this contract, he had the power to make the lease under which Muldrow took and held possession; and the contract of sale being ratified by Sutter, in April, 1850, became as binding as if the power had existed in the agent at the date of its execution.  (*Veazie* v. *Williams*, 8 How. 134; *Hatch* v. *Taylor*, 1 N. H. 538; *Lawrence* v. *Taylor*, 5 Hill, 107; *Reynolds* v. *Dothard*, 11 Ala. 431; *Dispatch Line* v. *Bellamy Manufacturing Co.*, 12 N. H. 205; *Daggett* v. *Emerson*, 3 Story C. C. 700.)

The agreement stated by Zabriskie is a full, perfect and complete agreement for the sale of land.  (6 Ves. 17; 1 Johns. Ch. 273; 13 Id. 297; McCord, 425.)

The want of a date to the letter is immaterial, because the execution of the agreement subsequently covers any defect in this respect.  But the testimony shows it had a date.

Again: defendant took possession under the lease, while plaintiffs were never in possession, and the rule is, " if the same thing is sold to two buyers, whether by the same person or by different sellers, the first of the two to whom it has been delivered, and who is in possession of it, will be preferred, although the thing was sold first to the other person; and in all cases the buyer will have his action of warranty against the seller.  (1 Domat's Civil Law, 203, sec. 218.)

Where a party has an equity, and also actual possession, a purchaser of the legal title is bound to take notice.  (*Bryant* v. *Ramirez*, 7 Cal. 451; 3 Sug. Vend. & Purch. 396, and cases cited; Dart. Vend. & Pinck. 408; 16 Ves. 249; 5 Johns. Ch. 33.)

IV. This agreement covers all the land in dispute, according to Zabriskie's testimony; and the description in the lease also embraces this land. The land described in the lease, is a tract lying along the American fork, bounded by said fork, and running down to land owned by Mark Stewart; thence east and north-east to a slough, to the north of A street; thence following the bank of said slough around to where the high lands slope to said American fork, to a point about half a mile below land belonging to McConnikin; thence to the place of beginning. We have not quoted the exact language of the lease, but have kept within its precise meaning. The testimony of the plaintiffs' own witnesses shows that the slough running back of the fort is the dividing line between the high and low land. The American river is the northern boundary of defendant's land, and the tract extends south to a line where the high land begins to slope toward the said American fork. By reference to the map, which appellants have attached to their briefs, on file, it will be seen that the low lands and small sloughs extend back to the "fort slough," and that upon the banks of this slough "the land begins to slope toward the river." It will also be seen that the land in dispute does not reach back to the high lands, by more than half a mile, and, consequently, the forced and unnatural construction placed upon the description in the lease, by plaintiffs' counsel, has no shadow of foundation.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Ejectment for a tract of land in Sacramento county. The parties claim under deed from John A. Sutter. To maintain the issue on their part, plaintiffs offered a deed from Sutter, dated May 3d, 1850. Appended to the deed is a memorandum signed by Sutter, stating that the deed was made in pursuance of an agreement between all the above parties on the twenty-sixth day of January, 1850. Plaintiffs also introduced another deed from Sutter to them for the same land, dated November 20th, 1850. The defendant offered in evidence a lease, purporting to be executed by John A. Sutter to Henry A. Schoolcraft, his attorney in fact, dated December 14th, 1849. This lease contained this clause: "That the said Muldrow shall have the privilege of purchasing any part of said land during the continuation of this lease, at its value, in preference to any other persons;" and defendants in this connection offered in proof a power of attorney from Sutter to School-

craft, dated July 28th, 1849. This paper is set out in *Billings* v. *Morrow* (7 Cal. 171). Defendant offered in evidence a power of attorney from Sutter to J. S. Fowler, dated July 9th, 1850, and also a deed purporting to be made by Sutter, by Fowler attorney, to defendant Muldrow, dated October 22d, 1850; to the introduction of which plaintiffs objected, upon the ground that Fowler had no authority to execute the deed—the power not being sufficient. The Court overruled the objection to the power, but excluded the deed. After some further evidence tending to show when Muldrow took possession of this land, and the extent and character of that possession, defendant rested.

Plaintiffs offered in evidence a bond from John A. Sutter to them for this land, dated January 26th, 1850, and a receipt on the back of it, of the same date, for $2,000 of the purchase money; also, Sutter's receipt, dated May 4th, 1850, for $3,060—part of the purchase money for this land. The signature of Sutter to the bond for title and the two receipts were admitted to be genuine.

Defendant objected to the introduction of the bond of January 26th, 1850, upon the ground that it was void for irrelevancy and uncertainty, and because plaintiffs did not propose to charge defendant with notice thereof. Plaintiffs then read the deposition of Samuel Norris, and introduced Julius Wetzlar as a witness, who testified as to what land was sold and intended so to be, by the bond of January 26th, 1850, to which he was a subscribing witness.

The Court sustained defendant's objection, and excluded said bond and notes, to which plaintiffs excepted.

Plaintiffs then proved by H. A. Bonner, that in March, 1850, Cooster surveyed as much of this land as could then be surveyed, and plaintiffs took possession of it, and leased a portion of it to some men for a garden.

Defendant then called J. C. Zabriskie as a witness, who testified, that in the early part of April, 1850, Henry A. Schoolcraft, who was then acting as attorney in fact for Sutter, and defendant Muldrow came to his office; that Muldrow had a letter from Sutter, directed to himself and Schoolcraft, in which Sutter stated that he had sold to Muldrow the land in dispute for $2,800, two hundred dollars of which had been paid, and the balance was to be paid in three equal payments of six hundred dollars, for which Muldrow was to execute his notes, and reform the lease so as to relinquish his right to purchase the balance of the land leased; that Muldrow was to have a bond for forty acres of

the land in dispute, and the balance of the land in dispute he was to have at any time during the continuance of the lease, upon the payment of eight hundred dollars additional; that Muldrow then and there executed the three notes for six hundred dollars each; and Schoolcraft, as the attorney of Sutter, executed and delivered to Muldrow a bond for the forty acres, and changed and reformed the lease.

The Court found the following facts in the case:

1. That on the third of May, 1850, John A. Sutter, by deed of that date, conveyed this land to plaintiffs, and on the twenty-ninth day of October, 1850, executed to them another deed for the same land.

2. That on the fourteenth day of December, 1849, Sutter, by Schoolcraft, executed to Muldrow a lease for this land, giving to him therein the privilege of purchasing this land during the continuance of the lease.

3. That Muldrow, immediately after the date of said lease, took possession of a portion of the land, and had held it ever since.

4. That on the seventh day of April, 1850, Sutter and Muldrow entered into such agreement as stated by Zabriskie, and that on the ninth day of April, 1850, the lease was reformed; defendant executed the three notes for six hundred dollars each, and Schoolcraft gave him a bond for forty acres of the land, and that the balance of the land was to be conveyed upon the payment of eight hundred dollars, in addition to the notes.

5. That, prior to the twenty-second day of October, 1850, Muldrow paid the $2,800, and Sutter, by Fowler, his attorney in fact, on that day executed to the defendant a deed for the land in controversy.

6. That when plaintiffs purchased of Sutter, they had actual notice of defendant's equity and interest in the land.

Upon the facts so found, the Court rendered a general judgment for defendant.

Muldrow went into possession shortly after this lease, and made improvements.   By the fifteenth of April, 1850, he had the land inclosed.

It seems to us that the merits of this controversy depend upon the construction and effect of this lease, and of the power of attorney under which it was made, and the subsequent contract for the purchase of the property, in pursuance of the preëmption right in the lease.

To the title of the defendant as arising from these facts, two objections are urged—1. That the power of attorney from Sutter to School-

craft did not authorize the contract with this condition.    2. That if it did, no contract for this land has been shown.

1. This power was executed on the twenty-eighth of July, 1849. It appoints Schoolcraft Sutter's attorney, for him and in his name, to " superintend my (his) real and personal estate, to make contracts, to settle outstanding debts, and generally to do all things that concern my (his) interest in any way, real or personal whatsoever, giving my (his) said attorney full power to use my (his) name, to release others or bind myself (himself) as he may deem proper and expedient; hereby making the said Schoolcraft my (his) general attorney and agent, and by these presents ratifying whatsoever my (his) said attorney may do by virtue of this power." This instrument was construed by this Court in *Billings* v. *Morrow* (7 Cal. 171). It was there held insufficient to authorize the attorney to convey real estate. The Court say : " The power is limited and special, and cannot be extended by implication to other acts more important in their character than those expressed in the body of the instrument. The rule may be thus stated : that where the authority to perform specific acts is given in the power, and general words are also employed, such words are limited to the particular acts authorized."

Without stopping to inquire whether the point actually decided in this case—the power to convey real estate—be within the rule thus given, we do not feel disposed to extend the doctrine asserted. In consistency with this case, we can hold the power of the attorney to make an executory contract of this character. The language of the power is express, " to make contracts;" these words are used in connection with the principal's real and personal estate; and this language is found associated with words implying a large discretion and control over the general subject of the business of the principal. We cannot see that this office of making contracts is not quite as specific a purpose as any other intimated in the letter; and we cannot find any limitation upon the character of contract contemplated which should exclude the particular one contained in this lease from the operation of the power. (*Sullivan* v. *Davis*, 4 Cal. 292 ; *Hunter* v. *Watson*, 12 Id.)

2. Assuming the authority of Schoolcraft to make this lease, with this provision in it, the next question is, as to the effect of this clause. The privilege conceded to the lessee to purchase within the term of the lease is as much a term of the contract, and binding upon the lessor, as any other term of the instrument. The lessee, it is true, was not bound

to purchase; but, upon a good consideration, the lessor bound himself to sell upon certain terms if the lessee wished to buy. It may be that this was only a proposition until accepted by the lessee; but upon his acceptance it became a valid agreement. It is not easy to perceive why a man may not as well agree to sell property upon the condition that another will consent to buy, as upon any other condition, or absolutely. The agreement is not the less a contract because it merely provides for, or is in advance of another contract, than if it were incorporated in the ultimate contract; or, in other words, a man may as well bind himself *to make* a contract, as to bind himself *by* contract, and the first as well partakes of the nature and essentials of a valid agreement as the last. The provision here presents a stronger case for the application of this principle than the lease in the case of *Laffan* v. *Naglee* (9 Cal. 662); for in that case the argument of the appellant's counsel was directed to show that the clause was not operative because the lessor did not bind himself to sell at all, even if the lessee desired to purchase. Yet it was held there that this was a binding agreement. (See also, 18 John. 174; 7 Cowen, 286.)

3. Having seen that this lease of the fourteenth of December, 1849, was a valid instrument, and that this preëmptive clause in favor of the lessee was a valid stipulation, the equity of Muldrow attached upon the execution of this paper, as against Sutter, to have an execution of this agreement.

4. This brings us to consider the effect of the subsequent arrangement, as proved by the testimony of Zabriskie. We have already referred to the proofs upon this point. We see nothing improbable in this statement—certainly, nothing which we could reject after credence had been given to it by the Judge below. There seems to be nothing wanting in the letter of Sutter to Fowler and Muldrow to make a perfect agreement, unless it be the want of a date; and this, whether we regard the Spanish law or the common law as governing the transaction. But we are not disposed to consider this matter of a date to the letter, containing the terms of the arrangement and purchase, as indispensable. We presume the letter was, as usual in such cases, dated; but if it were not, the transaction itself was closed by Fowler, and the notes of Muldrow taken on the ninth of April, 1850. If any omission in the agreement as to the date occurred, we presume it could be supplied by the notes taken in execution of the agreement by the agent a day or two after the arrangement was made. If we are right in this

view, we need look no further; for we find a valid agreement prior to any rights of the plaintiffs; possession of the premises; an execution of the executory agreement; and notice given to plaintiffs of the rights of the defendant when they acquired their claim. This equitable title, therefore, for all purposes of the defense of this action, would be sufficient to protect the defendant against the claims of the plaintiffs.

But the point that the agreement does not cover *all* the land in dispute is well taken. The land leased by Sutter to Muldrow is described in the lease as "land lying along the American fork, bounded by said fork, and running down to land owned by Mark Stewart, thence easterly and north-easterly along a slough to the north of A street, and following the bank of said slough around where the high land slopes to said American fork," etc. The true construction of this description fixes the boundary on the slough, and the words "around where the high land slopes," if they have any meaning at all, can only be applied to the bank or high ground adjoining the slough. To reject a definite for an indefinite boundary would be to violate all legal rules upon the subject. We see nothing in the evidence to justify the conclusion that the subsequent agreement referred to any other land, and the only particular in which the lease is stated to have been reformed was in relation to the right of Muldrow to purchase. The land outside of the slough is included in the deed of May 3d, 1850, under which the plaintiffs claim, and the title thus acquired is prior and superior to any claim upon the land on the part of Muldrow.

The judgment is therefore reversed. We think it better, in order that the facts in the case may be fully elicited, to remand this case, that it may be tried *de novo* if the parties desire.

Ordered accordingly.