[No. 723.]

# F. SCHROEDER AND M. J. FRANKLIN, APPELLANTS, v. HENRY GEMEINDER, RESPONDENT.

LEASE—COVENANT GIVING FIRST PRIVILEGE TO BUY.—In construing a covenant in a lease giving the lessees " the first privilege of buying said premises, at any time they may wish to do so, at the price of one thousand dollars, gold coin:" *Held*, that if the lessor wished to sell the premises he must first give the lessees the privilege of buying the same at the stated price, and if they refused to purchase at that price, then the lessor might sell to others at any price he saw fit.

IDEM.—*Held further*, that until such notice was given it would be at the option of the lessees, at any time during the existence of the lease, to purchase the property at the price stated; and that whenever the money was tendered by them the lessor was bound to execute a deed.

COVENANT FOR RENEWAL OF LEASE.—Where the lessees leased certain premises for the term of two years, *with the privilege of two more: Held*, that under such a covenant the payment of rent upon the part of the lessees, and acceptance of it by the lessor, amounted to a renewal of the lease.

WHEN TIME IS NOT OF THE ESSENCE OF A CONTRACT.—In such covenants time is not of the essence of the contract, unless the parties themselves, in agreeing upon the terms, have clearly considered time an important part thereof, or unless it necessarily follows from the nature and circumstances of the contract.

SPECIFIC PERFORMANCE—MUTUALITY OF CONTRACTS.—A court of equity, in actions for the specific performance of optional contracts, and covenants to lease or convey lands, will enforce the covenant although the remedy is not mutual, provided it is shown to have been made upon a fair consideration, and where it forms part of a contract, lease or agreement, that may be the true consideration for it.

CONSIDERATION FOR FIRST PRIVILEGE TO PURCHASE.—The covenant to pay the rent must be deemed to have been made in consideration as well for the privilege of becoming the purchaser of the property as for its use.

SPECIFIC PERFORMANCE—BARGAIN AND SALE DEED.—Where there is a cove-
nant in a lease to convey certain lands upon the payment of a certain
sum of money: *Held,* that the lessor would be compelled to execute a
bargain and sale deed if a decree of specific performance was ordered
by the court.

TENDER—WHEN OBJECTIONS MUST BE STATED.—Where the plaintiffs tendered
a deed to defendant for execution, embracing more ground than was
described in the covenant to sell: *Held,* that if that was the only objection
the defendant ought to have so stated at the time of the tender, and
pointed out the error in the description, so as to have given the plaintiffs
an opportunity to correct it.

IDEM—MONEY NOT BROUGHT INTO COURT.—Where plaintiffs failed to bring the
money into court: *Held,* that as no preliminary objections were made,
this objection could not be urged against the power of the court to order
a decree.

SPECIFIC PERFORMANCE—DISCRETION OF COURT.—It is not always a matter of
course to decree a specific performance of contracts; much often de-
pends upon the sound discretion of the court upon a view of all the
circumstances of the case; but this discretion must not be arbitrary nor
capricious, but must be regulated upon grounds that make it judicial.

IDEM—WHEN COURTS SHOULD DECREE.—Where the contract is certain, fair in
all its parts, just and equitable, for a valid consideration and capable of
being performed, a court of equity should decree a specific performance.

APPEAL from the District Court of the First Judicial
District, Storey County.

The facts are stated in the opinion.

*M. N. Stone,* for Appellants.

I. Contracts of this character have often been enforced by
courts of equity where the bargain was a fair and reasonable
one, untainted with fraud, and where the property had not
increased so greatly in value as to render it inequitable to
enforce it. It can hardly be claimed that this contract is
not a fair one, or that the property has so greatly enhanced
in value as to preclude the enforcement of the covenant in
a court of equity. The privilege to purchase contained in
leases has been enforced in numerous cases. (*Hall* v. *Cen-
ter et al.,* 40 Cal. 63; *Hawrathy* v. *Warren,* 3 Green (N. J.)
Equity Rep., vol. 18, 124; *Maughlin* v. *Perry,* 35 Md. 352;
*Corsen* v. *Mulvany,* 49 Penn. St. 89; *Kerr* v. *Day,* 14 Penn.
St. (2 Harris), 114; 50 Ill. 218; 27 Ind. 269; 26 Penn. St.
249.)

II. The tender of the money for the property was made by the appellants to respondent at a time when they had a right by the terms of the lease to make the same. The lease was for two years with the privilege of two more, and the tender was made before the expiration of the last two years. The testimony shows such a state of facts, and shows further, that the parties treated and regarded the lease as renewed by the acceptance of the same rate of rent by respondent and the continuance in possession as tenants by appellants. No other acts were necessary to be performed in order to renew the lease, and none could be performed which would more effectually show such intent both upon the part of the lessor and the lessees.

III. Time is not of the essence of real contracts, unless made so by the express agreement of the parties, or plainly indicated by the attending circumstances. (*Prout* v. *Roby*, 15 Wallace Rep. 476.)

IV. While it is true that in suits for specific performance of contracts to convey land it is discretionary for the chancellor to enforce them or not, still the discretion they have is a sound and not an arbitrary one. If the contract is one fair and just in its terms, supported by an adequate consideration, the decree should not be refused, and in such cases, we submit, the judgment of the lower court should be reversed, as in all cases of error where no discretion exists.

*Lewis & Deal*, also for Appellants.

I. In support of our position we claim that the covenant in the lease clearly binds the defendant to convey whenever the sum of one thousand dollars was tendered to him. To place any other construction upon it would render it of no force or effect, and the covenant would be nonsense.

A privilege is given to the plaintiff. What, then, is the meaning of the word privilege? It means a right or immunity. (See Burrell's Law Dictionary—Privilege; also Bouvier's and Worcester's.)

In the covenant in question the word can have no other meaning than "right;" hence the right is given to the

plaintiffs to buy the property in question at any time, upon the payment of one thousand dollars. And, surely, it will not be denied that if the right to purchase be given to them, there is not a corresponding obligation on the part of defendant to convey. If they have a right to purchase, it is their privilege to enforce it.

II. In this case there was a legal contract between the parties; the plaintiffs paid a valuable consideration for the privilege of purchasing, the law presuming that the rent was regulated in consideration of the covenant to convey. (Hilliard on Vendors, 296.)

III. An independent covenant in an indenture should be construed as a deed-poll; that is, most strongly against the grantor or lessor. (2 Parsons on Cont., 6th ed., side page 508–9; top page 507–508; note.)

IV. There may be cases holding that the grantee should present a deed for execution; but the reason of the thing and the best cases we believe to be the other way. (*Goodall* v. *West*, 5 Cal. 339; *Gray* v. *Dougherty*, 25 Cal. 278.)

Suppose, however, it was plaintiffs' duty to do so, and the error mentioned in the deed existed; we then contend that the defendant cannot take advantage of such error, because he did not object to its execution on any such ground. To entitle any one to take advantage of such error, and rely on it as a protection against a right of action, he should, not only in fairness, but upon legal principles, have stated his particular objections to signing the deed. When he makes no specific objection, the legal presumption is that he objects generally to executing any deed for the property, whether correctly drawn or not.

*Mesick & Seely*, for Respondent.

I. There is no covenant in the lease to sell the land in question; at most, it is but a covenant giving the plaintiffs the first privilege of buying at the price of one thousand dollars whenever the defendant may desire to sell at that price, nor can other interpretation be made of the language without altogether rejecting the word "first," or making the

words "first privilege" synonymous with the word right; and in the interpretation or construction of agreements the law abhors the rejection of any word or syllable, but receives and gives meaning to all.

II. The covenant is void for the reason that it is altogether indefinite as to the time within which or when the purchase might be made. If a reasonable time be intended, then the plaintiffs should have elected to make the purchase before three years and a month had elapsed.

III. Considering the covenant in the lease as a covenant to convey at the lessee's option, whatever a court of law might do, a court of equity will not compel a specific performance of it, because there is no mutuality in the covenant, and the defendant will not be compelled to sell, for the plaintiffs are not bound to buy. (1 Maddox Ch. 423–4; *Howell* v. *George*, Maddox Rep. 12; Harrington's Ch. Rep. 126; 1 Johnson's Ch. Rep. 282–378; 2 A. K. Marshall, 724, 346; Newland on Contracts, 152–4; 21 Cal. 404; 4 McLean, 19; 6 Paige Rep. 288; 2 Barb. 439; 8 Barb. 527.)

IV. There has been no breach of the covenant for conveyance. Whatever may have been the *intention* of Franklin, he made no tender of money to Gemeinder for a conveyance of the premises described in the lease. He tendered the money for the execution of the deed presented, which was a warranty deed for more land than Gemeinder owned and more than was described in the lease. (3 Green, 124–7.)

Besides, a decree for a conveyance cannot be had except the purchase-money has been paid, or is brought into court. (*Oliver* v. *Dix*, 1 Dev. & Bat. Eq. N. C. 606.)

By the Court, HAWLEY, C. J.:

On the 6th day of March, 1871, respondent leased to appellants "all that certain brick building numbered one hundred and thirty-six South C street, in the city of Virginia, and State of Nevada, said building being forty-four feet in depth westwardly, with the appurtenances, for the term of two years, with privilege of two more, from the first day of

April, A. D. 1871, at the monthly rent or sum of fifty dollars."
It was agreed that the lessees might make any improvements upon said premises which they might choose, the same to be made at their own expense. The lessor also covenanted that the lessees should have "the first privilege of buying the said premises at any time they may wish to do so, at the price of one thousand dollars, gold coin." The lessees entered into the possession of said premises, under said lease, on the first day of April, 1871, and regularly paid the monthly rent therefor, up to the second day of April, 1874, when they tendered to the lessor the sum of one thousand dollars, gold coin, and presented a draft of a deed for the property, and demanded its execution. Respondent refused to accept the money or to execute the deed. No reason was given for the refusal. The deed presented was a bargain and sale deed, with the usual covenants; it described the premises as follows: "All the following described real estate and premises situated in the city of Virginia, in the county of Storey and State of Nevada, to wit, all that part or portion of lot number two (2), block one hundred and seventy-four (174), range B, described as follows, to wit: fronting thirty-five (35) feet on the west side of South C street, and extending westwardly by the same width as the front a depth of forty-four (44) feet." During the time appellants were in possession, under the lease, they erected at their own expense a frame building twenty-eight feet in length, in the rear of the brick, at a cost of over one thousand dollars; built a furnace therein and made other improvements in order to carry on the brewery business. No additional rent was ever demanded for the use of the premises upon which the frame building was erected, and none was ever paid by the appellants. The brick building, with the land upon which it stood, was worth at the time of the execution of the lease one thousand dollars; at the time of the tender of the money its value, as testified to by witnesses, was from fifteen hundred to two thousand dollars.

This action was commenced to compel a specific perform-

ance of the covenant in said lease giving the first privilege of purchasing to appellants. In the complaint the premises are described substantially the same as in the deed tendered to respondent for execution.

The first question in this case involves a construction of the covenant giving appellants the first privilege of purchasing the leased premises. What does this covenant mean? It must be so construed as to carry out the real intention of the parties at the time of signing the lease. We think that, from the language used, it is susceptible of but one construction. If respondent wished to sell said premises he must first give appellants the privilege of buying the same at the stated price of one thousand dollars, and if they refused to purhase at that price then respondent might sell to others at any price he saw fit. The privilege was not absolute; that is, it was not a privilege binding upon respondent not to sell to anybody but appellants; but he was bound to give them the first privilege, and could not sell to others without appellants refused to purchase. Upon the other side, until such notice was given it would be at the option of the appellants at any time during the existence of the lease to purchase the property for the sum of one thousand dollars, and whenever the money was tendered by them, respondent was bound to execute a deed therefor. Is this covenant, thus construed, such a one as can be enforced in a court of equity?

It is argued by respondent that the covenant is void because the time within which the purchase might be made is not stated. The language of the covenant is, "at any time they may wish to do so." Whatever construction might be placed upon these words in a general sense, it seems to us that from the peculiar wording of the entire clause in question, they mean that appellants could at any time purchase when respondent gave them the first privilege, as he was bound to do, before selling to others, and if he did not give them notice of his intention to sell to others then they could, at any time they wished to do so,—certainly during the existence of the lease,—elect to make the purchase.

The time was thus indefinitely stated so as to give effect to the covenant and to carry out the real intention of the parties. But counsel argue that the lease was only for two years, and therefore claim that the tender was not made during the term of the lease. The answer to this is too plain to admit of any doubt. After the expiration of the two years mentioned as the term of the lease, appellants continued to pay, and respondent continued to receive, the rent; no extension of privilege was asked for by appellants, and no objections were made by respondent to their remaining in possession of the premises. By an express covenant in the lease, appellants had the privilege of leasing the premises for two years more, and under this covenant the payment of rent upon the part of appellants and acceptance of it upon the part of respondent amounted to a renewal of the lease. Moreover, it is well settled that in such covenants time is not of the essence of the contract, unless the parties themselves in agreeing upon the terms have clearly considered time an important part thereof, or unless it necessarily follows from the nature and circumstances of the contract. (1 Story Eq. Jur., Sec. 776, and authorities there cited.)

In *Maughlin* v. *Perry and Warren,* the lessor covenanted to sell certain property to his lessee for a stated sum, "at any time during the existence of the lease," and the court held that "this was a continued obligation running with the lease on the part of the lessor, with the option in the tenant to accept the same or not, within that time." (35 Md. 357.)

In *Prout* v. *Roby,* where the covenant was that if the lessee "should *at any time* thereafter pay to the lessor" a specified sum, the lessor should execute a deed of the leased premises, the court said: "If the covenant had been to convey, upon the payment of the purchase-money during the life of the lease, putting an end to the lease would have destroyed the covenant. But the covenant is to convey whenever the purchase-money should be paid. In such cases the conveyance may be demanded at any time, and the existence or non-existence of the lease when the demand is made is immaterial to the rights of the parties." (15 Wallace, 476.)

In *D'Arras* v. *Keyser*, where the time mentioned within which the lessee of the premises had the privilege of purchasing the same was one year, the tender was not made until one year and nine months after the expiration of the one year mentioned in the lease, the lessee having continued in the possession of the property, paying the rent agreed upon in the lease up to the time of the tender. It being there, as here, objected that the money was not tendered within the time limited in the lease, the court said: "Mere default in the payment of money at a stipulated time, admits, in general, of compensation, and hence time of payment is seldom treated as of the essence of real contracts. Parties may make it so by express agreement, but there is nothing on the face of this contract, or in the attending circumstances, to indicate the intention of these parties to make time essential. The covenant for title was part and parcel of the lease, and the term fixed was one year, yet the lessees were permitted to hold over, and rent was received without objection. From this the law would imply a renewal of the lease from year to year, and put the landlord to his notice when he meant to determine it." (26 Penn. State, 254.) While much that is said in these opinions is applicable to this case, it will be observed that we are not required to go to the extent of the rule therein announced. The facts of this case, applied to the principle of law involved, are much stronger than in the cases above cited. Here there is a clause in the lease expressly giving the privilege of renewal; the time is not limited to the two years first mentioned in the lease, nor restricted to the time of the existence of the lease under the privilege of renewal. The language is general,—at any time they wish to do so. Construing it liberally in favor of the lessor, it certainly gives to appellants the privilege of purchasing the property at any time during the existence of the lease.

It is next insisted that a court of equity should not decree a specific performance, because the obligation of the parties is not mutual, and several authorities have been cited to the effect that when the contract is of such a nature that it

cannot be specifically enforced as to one of the parties, equity will not enforce it against the other. The case of *Parkhurst* v. *Van Cortland* was reversed on appeal in the court of errors (14 Johns. 15). Some of the other cases have but little applicability to the facts of this case, and several of them have been reviewed and expressly overruled by the decisions in other States. There are many exceptions to the general rule stated in said cases, and without attempting to review the authorities relied upon by respondent, we think it may now be considered as well settled by all, or nearly all the modern authorities, that a court of equity, in actions for the specific performance of optional contracts and covenants to lease or convey lands, will enforce the covenant, although the remedy is not mutual, provided it is shown to have been made upon a fair consideration, and where it forms part of a contract, lease or agreement that may be the true consideration for it.

What was the consideration for this covenant giving the first privilege to purchase? In order properly to answer this question, all the covenants in the lease must be considered. The covenant upon the part of the lessor to lease the premises for a period of two years, with privilege of two more; the right of the lessees to make improvements thereon; to purchase the same at any time at the price mentioned, and the covenant upon the part of the lessees to pay the rent agreed upon, must be considered as constituting one entire agreement, each particular covenant forming an inducement thereto. The covenant to pay the rent must be deemed to have been made in consideration, as well for the privilege of becoming the purchaser of the property, as for its use. (Hilliard on Vendors, 296.)

In *Stansbury* v. *Fringer*, the rule is thus stated by the court: "Where a contract consists of several distinct and separate stipulations on one side, and a legal consideration is stated on the other, it must be considered that the entire contract was in the contemplation of the parties in each particular stipulation, and formed one of the inducements therefor, and no one stipulation can be supposed to result

from, or compensate for the consideration, or any portion of it, exclusive of other stipulations, unless the parties have expressly so declared." (11 Gill & Johns. Md. 152.)

Applying this rule to the case under consideration, it cannot be said, from the face of the lease, that appellants would have agreed to pay the rent, without they had the first privilege of purchasing the property. There being a fair consideration for this covenant it ought to be enforced.

In *De Rutte* v. *Muldrow,* which was an action of ejectment, the defendant offered in evidence a lease which contained this clause: "That the said Muldrow shall have the privilege of purchasing any part of said land during the continuation of this lease, at its value, in preference to any other persons." The court, in determining the effect of this clause, said: "The privilege conceded to the lessee to purchase within the terms of the lease is as much a term of the contract, and binding upon the lessor, as any other term of the instrument. The lessee, it is true, was not bound to purchase; but, upon a good consideration, the lessor bound himself to sell upon certain terms, if the lessee wished to buy. It may be that this was only a proposition until accepted by the lessee, but upon his acceptance it became a valid agreement." (16 Cal. 513.) In *Hall* v. *Center,* where the lease contained a covenant to the effect that Hall should have the privilege of purchasing the premises at a stipulated sum, on or before the expiration of the lease, it was claimed there, as here, that the contract ought not to be enforced for want of mutuality. The action was brought to obtain a decree for specific performance of this covenant. Wallace, C. J., in delivering the opinion of the court, said: "The contract of the lessors, by which they covenanted that the lessee should have the option to purchase or not at his election, was founded upon an adequate consideration, was certain in its terms, was fair and just in all its parts, and was not a hard or unconscionable bargain. Why should not such an agreement be enforced? The reason assigned by Lord Redesdale (and he was distinguished for the strenuousness with which he maintained the necessity

of mutuality), in the case already mentioned, is that the lessors here might be in this situation, that if the land should rise in value they would be compelled by a decree to sell at a stipulated price, while, if it had decreased in value, the lessee could not be compelled to take it at any price. But it is not easy to see why this would not be equitable. May not the mere option to purchase be sold? Or (to adopt the language of Judge Baldwin, in *De Rutte* v. *Muldrow*, 16 Cal. 513), may not a man 'as well agree to sell property upon the condition that another will consent to buy, as upon any other condition or absolutely?' And if the owner of an estate has fairly made a contract for a sufficient consideration received by him, by which contract he has himself stipulated that another person may, at the option of the latter, receive a conveyance of the estate upon the payment or tender of a fixed sum, within a given time, what principle of equity is violated by making the owner comply with his contract? If the other party has obtained the option, he has fairly bought and paid for it, and there is no principle or policy of law violated in its purchase." (40 Cal. 67.)

We have quoted from the authorities in California, thus at length, because they express the views we entertain upon this point. The principles therein announced are sustained by the following authorities: *Kerr* v. *Day*, 14 Penn. State, 112; *Corson* v. *Mulvany*, 49 Penn. State, 88; *Rogers* v. *Saunders*, 16 Maine, 97; *Hawralty* v. *Warren*, 3 Green. (N. J.) 125; *Perkins* v. *Hadsell*, 50 Ill. 217; *Souffrain* v. *McDonald*, 27 Ind. 269.

It may be well to state in this connection, that Chancellor Kent, who delivered the opinions in *Parkhurst* v. *Cortland* (1 John. Ch. 275), in 1814, and in *Benedict* v. *Lynch* (1 John. Ch. 370), in 1815 (both cited and relied upon by respondent's counsel), afterwards, in 1817, in *Clawson* v. *Bailey*, in passing upon this question, after referring to the observations of Lord Ch. Redesdale, in *Lawrenson* v. *Butler* (1 Sch. & Lef. 13, also cited by respondent), who thought that the contract ought to be mutual to be binding, and that if

one party could not enforce it the other ought not, said: "I have thought, and have often intimated, that the weight of argument was in favor of the construction that the agreement concerning lands, to be enforced in equity, should be mutually binding, and that the one party ought not to be at liberty to enforce, at his pleasure, an agreement which the other was not entitled to claim. * * * But, notwithstanding this objection, it appears, from the review of the cases, that the point is too well settled to be now questioned." (14 John. 488.) The next objection is that no sufficient tender was made. This objection is based upon the ground, as stated by respondent, that the money was tendered for a warranty deed which embraced more ground than was described in the lease. The deed tendered for execution was, as we have already stated, a bargain and sale deed; just such a deed as the respondent would be compelled to execute if a decree of specific performance was ordered by the court. (Hilliard on Vendors, 296, 9, a.) It is questionable whether the appellants were bound to prepare the deed, and tender it for execution, at the time of the tender of the money, although we think that is the safer practice; but be that as it may, we are satisfied that the objection urged upon the ground that the premises described in the deed were not the same as described in the lease, is not well taken, for the reason that no such objection was made at the time the deed was presented. If that was the only objection, respondent ought to have so stated at the time of the tender and pointed out the error in the description, so as to have given appellants an opportunity to correct it. (*Goodale* v. *West*, 5 Cal. 341.) But in any view this objection could only be urged upon the question of costs and not to defeat appellants' rights.

It is also insisted that appellants should have brought the money into court. This objection, like the one just noticed, does not reach the merits of the case. Appellants aver in their complaint that they are ready and willing to pay said money upon the execution by respondent of a deed for the property. If the money had been brought into

court, respondent could at any time have accepted the same and executed a proper deed for the leased premises and saved further costs.

Perhaps the respondent might have objected against proceeding with the trial until the money was paid into court. No preliminary objections, however, were made, and this objection cannot now be urged against the power of the court to order a decree. Courts of equity ought to determine the rights of the parties according to the broad·principle of justice and fair dealing, and not by the technical and refined distinctions of the law. A decree should not be granted if there has been gross laches or neglect upon the part of those seeking the enforcement of the covenant. But the facts of this case do not justify the refusal of the decree because the money was not brought into court. · If otherwise entitled to the decree, the court should have granted it, and specified the time within which the money should be paid, or it might have ordered the money brought into court before signing the decree.

It will be seen, upon a careful inspection of the pleadings, that the objection next argued, that the premises are erroneously described in the complaint—like others just noticed—does not reach the merits of this appeal. The answer admits that respondent leased to appellants the premises described in the lease. Admitting, then, that the complaint contains a further description that is erroneous, enough appears that is correct to designate the property, and, at least, enough to make it apparent that the same premises are meant.

Appellants ought to have corrected this error in the court below, and upon a motion made to that effect, it would be the duty of the court, upon such terms as it thought just and proper, to allow them to amend the description in the complaint so as to correctly describe the leased premises. Lastly, it is contended that the granting or refusing the relief asked was within the discretion of the court, and, inasmuch as the property had increased in value, without any act of appellants, and was of but little value to them with-

out the property in the rear, that the rulings of the court ought not to be interfered with. It is true, as was argued by respondent's counsel, that each case for a specific performance is to some extent governed by its own peculiar circumstances; and it is also true, that rulings which come within the discretion of the court are seldom disturbed. It is not always a matter of course to decree a specific performance of contracts; much often depends upon the sound discretion of the chancellor upon a view of all the circumstances of the case; but this discretion must not be arbitrary nor capricious, but must be regulated upon grounds that make it judicial, and where the contract is certain, fair in all its parts, just and equitable, for a valid consideration and capable of being performed, a court of equity should decree a specific performance. The property has not risen in value to such an extent as to lead to a reasonable conclusion that there was any fraud or mistake. The price stated was a fair one for the property at the time of the contract, and it is certainly reasonable to presume that both parties, in making the contract, took into consideration the probabilities of its increasing in value within the term of the lease. The fact that the brick building is not large enough to enable appellants to carry on the brewery business, does not justify the refusal of the decree. If appellants are willing to take the property and pay the price agreed upon, it surely does not lie in the mouth of respondent to say that they ought not to have it because it is of but little value to them in the business in which they are engaged, and that it would be of more value to him as a homestead. In this connection, it is proper to state that the complaint contains an allegation that by mistake the premises in the rear of the brick, upon which appellants erected the frame building, was omitted from the description of the premises in the lease, and it also prays to have the lease reformed so as to include said premises. This presents a question of fact to be determined upon a new trial.

The judgment of the district court is reversed, and cause remanded for a new trial.