BUSHMAN v. FALTIS.

1. SPECIFIC PERFORMANCE — CONTRACTS—LANDLORD AND TENANT—
ESTATES FOR YEARS—TIME OF PAYMENT.

Under a contract whereby defendant agreed to enter into
a lease to the complainant of certain premises for a period
of ninety-nine years, and which provided that the rent
should be a stated amount per year, and contained also
a provision that the lessee should be entitled to purchase
the premises on or before ten years from the execution
of the lease for the sum of $100,000, there was no such
indefiniteness as to the time of payment as to require
the court of equity to decline specific enforcement, if the
contract was otherwise valid and was certain as to par-
ties, amount, description, term, and rental.

2. LANDLORD AND TENANT—RENT—TIME OF PAYMENT.

Rent payable at a stated amount per year is due at the
end of the period with reference to which the rent is
computed, i. e., at the end of each year.

3. SPECIFIC PERFORMANCE—MODIFICATION OF CONTRACT.

The agreement would not· be changed or rendered void
because the complainant originally provided in a draft of
a lease which was not signed that the rent should be pay-
able in monthly installments, and defendant also drafted
but did not execute another lease in which the rent was
payable in monthly installments in advance.

4. SAME—LEASE—PAROL EVIDENCE RULE.

Where the defendant authorized his attorney in writing
subsequently to entering into the contract, and after put-
ting complainant into possession, to insert in the lease a
number of changes set forth by him in a letter, but the
complainant never agreed to or accepted the terms, which
were not inserted in the original contract, the court of
equity could not enforce the additional provisions and
there was no ground for the contention that the minds
of the parties had not met, as to the agreement which
they, in fact, signed, and in part performed.

5. SAME—OPTION—LANDLORD AND TENANT.

While it is a sufficient reason for denying the equitable

remedy of specific performance that no time of purchase was specified by the parties, in a lease and option which they had executed, such lease was valid and enforceable in equity where it provided that the lessee might purchase the premises at any time within ten years for a stated amount; the lessee would be entitled to exercise this privilege at any time within the period by tendering the amount named.

6. SAME—FRAUDS, STATUTE OF—CONTRACTS.

   *Held,* also, the contract was certain and complete and valid under the statute of frauds.

7. SAME—ASSIGNMENT—EQUITY.

   In defense of the action for specific performance of the contract, it was not a sufficient reason for denying to the complainant the relief prayed because defendant claimed he might form a corporation with a small amount of capital stock, to take over the lease, so as to escape personal liability, in the absence of any proof or evidence that the complainant had such intention or that any purpose existed to do any unjust or inequitable act.

Appeal from Wayne; Murphy, J. Submitted October 8, 1914. (Docket No. 17.) Decided January 29, 1915.

Bill by Franklin E. Bushman against John J. Faltis for the specific performance of a contract for a lease and option to purchase real property. From an order overruling the demurrer to the bill of complaint defendant appeals. Affirmed.

*Ralph B. Wilkinson* (*Henry M. Butzel,* of counsel), for complainant.

*Walker & Spalding,* for defendant.

KUHN, J. The complainant's bill is for the specific performance of an agreement by the defendant to make a 99-year lease of certain land in Detroit. A demurrer was filed by the defendant; the grounds thereof being stated as follows:

"(1) Because the alleged agreement set up in the second paragraph of said bill, and upon which said suit is based, lacks mutuality and is unconscionable in its terms.

"(2) Because said alleged agreement is too indefinite and uncertain to be susceptible of specific performance.

"(3) Because said alleged agreement was never signed or accepted in writing by the complainant."

Defendant appeals from an order overruling this demurrer.

The agreement is as follows:

"Received of Franklin E. Bushman the sum of $250, which is hereby acknowledged, to apply upon the first six months' rental of the property known as lots 37, 38, 39, and 40 of block 85 of Governor and Judges' Plan, situated in the city of Detroit, county of Wayne and State of Michigan, consisting of 160 feet on the south side of Columbia street west, between Woodward and Park street.

"The balance, $1,250, to be paid on or before sixty days from the date hereof, abstract to be brought down showing good, merchantable title.

"It is understood that the said John J. Faltis is to execute a lease on the above-described premises to Frank E. Bushman, or any corporation to be incorporated for a period of ninety-nine years, from and after the first day of August, 1913, the rental for the period of said term to be as follows: $3,000 per year net, for three years, free of all taxes and assessments that may be levied against the above property. For the balance, ninety-six years, the rental shall be $4,000 per year net, free of all taxes and assessments.

"It is understood and agreed upon that the said John J. Faltis agrees to sell to the said lessees, on or before ten years from the execution of the above lease, the property described herein, for the sum of $100,000.

"It is understood and agreed upon that there shall be no restrictions as to the kind or class of buildings that the said lessee may desire to erect and that he may have the privilege of subletting the above premises.

, "We hereby set our hand and seal this twenty-fourth day of July, 1913.

"JOHN J. FALTIS."

The failure of the lessee to sign this instrument, it is now conceded, is not material, and no point is made of it by the appellant. *Smith* v. *Mathis,* 174 Mich. 262 (140 N. W. 548) ; *Mull* v. *Smith,* 132 Mich. 618 (94 N. W. 183).

Defendant having demurred to the bill, every allegation therein, for the purposes of this discussion, must be taken as true, and, in order to show what is claimed, the following paragraphs of the bill are set forth:

"*Third.* And your orator further shows that, on the signing of the agreement set forth in the last preceding paragraph, the possession of said premises was turned over to your orator, and that your orator proceeded to make certain repairs thereon and alterations therein, and did expend and has expended a large sum of money thereon, and has collected certain rents from tenants in possession of said premises, and that your orator has retained possession of said premises from the said 24th day of July, 1913, to the present time.

"*Fourth.* That subsequently the said John J. Faltis had prepared and submitted to your orator abstracts of said property, which abstracts were duly examined by your orator's attorney and certain defects found therein, which defects, at the direction of the said John J. Faltis, were referred to Stellwagen & Mac-Kay, attorneys for the said Faltis, who agreed that certain of the defects would be adjusted as soon as possible, and certain other defects they refused to adjust, which last defects your orator agreed to waive.

"*Fifth.* And your orator further shows that subsequently, and before sixty days from the date of said agreement, he prepared a lease according to the terms of said agreement hereinabove set forth, and submitted the same to the said John J. Faltis, a copy of which lease is hereto attached, marked 'Exhibit B,' and made a part hereof, together with an offer to

pay said twelve hundred and fifty dollars ($1,250); that the said Faltis refused to accept said lease and wished to have one prepared by his attorneys; that such agreement was thereupon prepared by Stellwagen & MacKay, and submitted to your orator's attorney, who objected to certain clauses therein, a copy of which lease so prepared by Stellwagen & MacKay is hereto attached, marked 'Exhibit C,' and made a part hereof, and on the twentieth day of September, 1913, and before the said sixty days had expired, the said John J. Faltis directed his said attorneys, in writing, to make certain changes in said lease, a copy of which said written instructions are hereto attached, marked 'Exhibit D,' and made a part hereof, which directions were duly submitted to the attorneys for the said John J. Faltis, who agreed to have a lease prepared in accordance with said directions, as your orator agreed to accept said lease prepared by Stellwagen & MacKay with the changes therein directed to be made by the said Faltis, and that a copy of said lease, as prepared by Stellwagen & MacKay, and embodying the changes as directed by said Faltis in Exhibit D, is hereto attached, marked 'Exhibit E,' and made a part hereof.

"*Sixth.* And your orator further shows that subsequently, on the 22d day of September, and before the said sixty days had expired, the said John J. Faltis, in consideration of the delay in preparing said lease, indorsed upon said agreement (Exhibit A), hereinbefore set forth, the following: 'I hereby extend inclosed option until lease pertaining to same is perfected. * * * John J. Faltis, Detroit, September 22, 1913.'

"*Seventh.* And your orator further shows that he has continually endeavored to obtain said lease, and that he has tendered the said John J. Faltis said sum of twelve hundred and fifty dollars ($1,250) in legal tender, stating that he would make the payment on said agreement hereinbefore set forth required, and that the lease would be afterward prepared according to the directions of said John J. Faltis to his attorney, but that the said John J. Faltis refused to accept said money, and still refuses so to do, or to execute any lease to your orator.

"*Eighth.* And your orator further shows that he

has been at all times ready and willing and able, and still is ready, willing, and able, to carry out the terms of said agreement hereinabove set forth, and he hereby tenders into court said sum of twelve hundred and fifty dollars ($1,250), in said contract provided to be paid.

"*Ninth.* And your orator further shows that said lease is of great value to your orator—far in excess of one hundred dollars—and of peculiar value for the reason that your orator has made certain plans and arrangements which required the use of the property hereinabove described, and that your orator will suffer irreparable injury, unless said defendant is re‐ quired to carry out said agreement."

It is urged that the agreement is bad because it does not fix the time for the payment of rent nor, in the event of sale, the time of the payment of the price at which the lessee is given the option to purchase; and that, in order to have specific performance, the con‐ tract must be complete, certain, and definite. It is contended by the complainant that there is no in‐ definiteness, uncertainty, or incompleteness in the memorandum, in that it is definite as regards the description of the premises to be leased, as to the persons to whom the lease runs, as to the length of time the lease was to be in force, as to the amount of rental reserved by the defendant and to be paid by the complainant, and also as to the amount to be paid in case of sale.

Taking the contract standing alone, it providing that the rent shall be a certain amount "per year," under the authorities the amount would be due at the end of the period with reference to which rent is com‐ puted, which in the instant case would be at the end of the year. See *Coomber* v. *Howard*, 1 C. B. 440, 135 Eng. Rep. 611; *Gibbens* v. *Thompson*, 21 Minn. 398; *Kistler* v. *McBride*, 65 N. J. Law, 553 (48 Atl. 558). In our opinion, therefore, it cannot be said that the agreement itself is uncertain and incomplete because

184 Mich.—12.

it fails to state definitely the time of the payment of rent.

It is argued that in. the case before us it is clear that neither party intended that the rent should be paid at the end of each year, because the original draft of the lease prepared by the complainant provides that the rent shall be payable in monthly installments on the 15th of the month, while the draft lease originally prepared by the defendant provides that the rent shall be paid in monthly installments in advance on the first of the month, and that, as a result, the minds of the parties never met as to the time of the payment of rent. It does not seem that there is much force to this argument, as the legal effect of the original writing as to the time of payment of rent would not be changed nor be made uncertain, when in law it was certain, because the parties thereto perchance subsequently may have entered into negotiations to make different terms of payment than provided for in the original agreement.

It is claimed that, if there was any uncertainty about the details of the lease, the terms were made certain by the subsequent conduct of the parties. It appears that after giving possession of the property to the complainant, and after allowing him to expend money in repairs, the defendant went over a form of lease prepared by his attorney and directed him in writing to make certain changes in the lease, as requested by complainant, which complainant agreed to accept. The instruction in writing was as follows:

"DETROIT, MICHIGAN, Sept. 20, 1913.
"MR. JOHN D. MACKAY,
          "City.
"*Dear Sir:*
"I hereby authorize the following changes in the lease heretofore prepared by you for me, and running to Franklin E. Bushman: [Fifteen changes are here set forth.] Wish you would kindly have this lease

rewritten in conformity with the above suggestions.
"Yours respectfully,
[Signed]    "JOHN J. FALTIS."

It is not charged in the bill, nor does the letter to his attorney show, that defendant agreed to execute the draft of the lease with the modifications; and, the minds of the parties not having met with reference thereto, the court cannot insert them.

The agreement provides an option to exercise a right to purchase within a fixed time, which clearly distinguishes the case from *Gault* v. *Stormont*, 51 Mich. 636 (17 N. W. 214), and *Ebert* v. *Cullen*, 165 Mich. 75 (130 N. W. 185, 33 L. R. A. [N. S.] 84), in which cases it was sought to enforce specific performance of agreements to sell, when no time was fixed for the payment of the purchase price. Under this agreement we are of the opinion that the purchaser would be entitled to a deed with the usual covenants, upon tender by him of the amount specified at any time within the period fixed. *Watts* v. *Kellar*, 56 Fed. 1, 5 C. C. A. 394; *Schroeder* v. *Gemeinder*, 10 Nev. 355.

Can it then be said that the agreement to lease is so incomplete or uncertain as to make it impossible to decree specific performance? There is no uncertainty as to the names of the parties to the lease; there is no indefiniteness as to the description of the premises leased; no uncertainty as to the length of time the lease is to be in force nor as to the annual rentals, nor as to the amount to be paid in case of sale. If the lease provided for in the agreement were for any ordinary short-term lease, the well-established rule might be applied that the law will imply that a lease with usual covenants required by such leases shall be drawn and signed. *Church* v. *Brown*, 15 Vesey, Jr., 258; 1 Tiffany, Landlord and Tenant, §§ 66, 68. However, the provision in the instant case being for a 99-year lease, and it not appearing that

the execution of 99-year leases has become so common as to establish a custom and make it possible to say what covenants and agreements would usually go into and become a part of such a lease, this rule cannot be said to apply. However, as the agreement to lease sets forth definitely in our opinion all the essential requirements of a lease (see *Cochrane* v. *Mining Co.,* 16 Colo. 415 [26 Pac. 780] ; Jones, Landlord and Tenant, § 137a ; 1 Tiffany, Landlord and Tenant, § 66), it cannot be said, because other and different covenants might have been agreed upon, that what in fact has been provided for is too uncertain and indefinite to permit of specific performance.

We are of the opinion that the agreement, standing by itself, is a complete contract, certain in its terms, and satisfies the statute of frauds (3 Comp. Laws, § 9511, 4 How. Stat. [2d Ed.] § 11395).

In answer to the claim that the agreement is inequitable in that a corporation might be formed with a minimum capital stock to take over the lease from the lessee and the personal liability of the lessee thus cease, it can be said that there is as yet no proof that such is the intention of the parties, and it cannot be said that there is a presumption that the lessee will attempt anything unjust or inequitable. We therefore conclude that this is such a contract as a court of equity should enforce.

The order of the chancellor in overruling the demurrer is affirmed.

BROOKE, C. J., and McALVAY, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.