JOSEPH RICHARD FRANCONE AND MARION FLORENCE FRANCONE *v.* SAMUEL McCLAY AND ELIZABETH McCLAY.

NO. 2989.

ARGUED NOVEMBER 4, 1954.                    DECIDED MAY 20, 1955.

TOWSE, C. J., STAINBACK, J., AND CIRCUIT JUDGE McKINLEY IN PLACE OF LE BARON, J., ABSENT.

OPINION OF THE COURT BY STAINBACK, J.

This is an appeal from the decree of the chancellor ordering appellants to specifically perform a written contract to enter into a 65-year term lease with the appellees for certain real property situate at Waikiki, in Honolulu.

The agreement of the parties sought to be specifically enforced is set forth in the bill of complaint and Exhibit "A" attached thereto filed by the appellees. By this contract appellants agreed to lease 7,613 square feet of property in Waikiki with improvements thereon, consisting of two two-story frame buildings and a one-story frame building containing eight furnished and one unfurnished apartments. The contract consisted of a printed form signed by all parties thereto and an attached letter by appellants containing a lease proposal, and a listing contract granting the broker an exclusive authorization to sell and, further, the contract acknowledged receipt of the sum of $1,000 as a deposit on the contract set forth thereunder. The letter of authorization to the broker, after describing the premises by street address and reciting the present annual rental income and estimated operating expenses and net profit, set forth as follows the terms and conditions in eight paragraphs, all of which were made a part of the contract to lease:

"1. Lessee will be given a 65-year lease with an annual net rental of $3,600.00. Lessee to pay all taxes, insurance premium, assessments and any other charges that shall be assessed against the property.

"2. Lessee will be required to pay $5,000.00 for the purchase of the furniture and fixtures which will become the property of the lessee, except dining room table and 6 chairs in 328 upstairs.

"3. The lessee will pay the last year's minimum rental of $3,600.00 in advance, as a deposit to guarantee future payments, and $300.00 on the first of each month throughout the term of the lease. Commission to Broker by lessor.

"4. In the event that the gross rental income from the operation of the premises exceeds $15,000.00 annually, the annual ground rental shall be increased by 5% of the gross annual income over and above the said $15,000.00.

"5. The lessee will be permitted to make reasonable alterations and additions to the premises, subject to lessor's approval.

"6. All furniture in lessor's apartment, except stove, heater and refrigerator to be removed. Also dining room table and 6 chairs.

"7. Lessor will not unreasonably withhold consent to sale of lease to another party.

"8. All other usual covenants will be matter in lease."

The listing contract to which reference was made was a contract which had been entered into between appellees and the real-estate broker at the time the property was listed with the broker. The $5,000 for certain furniture itemized in the letter, the sum of $3,600 in cash for the last year's rental, and the sum of $300 in cash for the first month's rental were to be paid on or before July 1, 1953. The lease was to be executed on or before July 1, 1953, the date occupancy of the premises was to commence.

On June 21, 1953, appellants advised the real-estate broker by letter that they had decided to refuse to sign the lease at a rental of $300 per month; that they were "Taking advantage of item seven in your contract for lease of my property, have decided to refuse to sign the lease on a $300.00 per month basis.

"We have been getting Three Hundred dollars per month cash out of our places and a free rental, valued at Two Hundred Dollars per month. This we have to have to eat and live.

"We therefor will lease at Five Hundred a month. However, to Mr. Francone, will agree to Four Hundred per month for ten years, and then Five Hundred per month

on a fifty-one year lease with an option of fifteen years more at Six Hundred Dollars per month. Furniture sale to stand as agreed upon."

The appellees, after notification of such refusal, made oral demands upon the respondents-appellants that they reconsider their refusal to enter into the lease as provided by contract and on June 29, 1953, made written demand upon appellants for the execution of the lease, saying that they were ready, able and willing to perform. However, the lessors-appellants continued their refusal to perform to the date of the institution of the suit herein.

Appellants filed a demurrer to the bill upon the ground that it did not state facts sufficient to show the right to the relief prayed for, or to any relief in equity; that the alleged agreement to lease was vague, indefinite, uncertain and incapable of being specifically enforced; that it conclusively appears from the said bill of complaint that the parties to the alleged agreement to lease intended that further negotiations be had with respect to execution, terms, conditions and covenants to be included in the proposed lease; that the terms, covenants and conditions alleged to have been agreed upon by the parties are insufficient to entitle the petitioners to a decree for specific performance as prayed for, and petitioners had failed to perform the conditions precedent to their right to the relief prayed for or to any relief in equity.

The chancellor overruled the demurrer and the appellants elected to stand on the demurrer and a decree *pro confesso* against appellants was entered.

After the introduction of evidence the chancellor found for appellees upon all allegations of the complaint and granted the prayer of the petitioners. The chancellor in his decision found, among other matters, that the respondents listed the property on June 15, 1953, with Wendell Brooks, a Honolulu broker, for leasing according to the

terms set out therein; the property was described by street number, area, and improvements consisting of two two-story buildings and one one-story building; in both the listing agreement and lease proposal the premises are described by both street address and by tax map key number. The chancellor also sets forth the lease proposal as heretofore described. He further found that petitioners and respondents met with the broker on June 20, 1953, and that at this meeting the parties executed the contract, Exhibit "A" in petition heretofore referred to, "wherein Petitioners agreed to lease from Respondents and Respondents agreed to lease to Petitioners subject premises." The contract stated that the lease was to be for 65 years (modified from 51 years as originally proposed) as per attached listing and letter; that the contract was executed under date of June 20, 1953, by all of the parties thereto; that petitioners paid the sum of $1,000 as a deposit on said contract; that on June 21, 1953, the respondents wrote a letter of like date to their broker advising him that "Taking advantage of item seven in the sale contract," they had decided they would not execute a lease on a $300 per month basis but would do so for a rental of $500 per month; the chancellor further found that "Item seven in the contract reads 'That this contract shall be binding if signed by the parties hereto within one (1) day from the date of the initial payment receipt aforementioned. Necessary documents to complete this transaction shall be drawn and duly executed on or before July 1, 1953, unless this time is extended by mutual consent.' Since the initial payment receipt and contract were both signed concurrently and both are dated June 20, 1953, the foregoing reference to item seven obviously has no force or effect." Additionally, the chancellor found that oral demands were made upon the respondents by the petitioners for the performance prior to July 1, 1953, the petitioners inform-

ing the respondents that petitioners were ready, willing and able to perform the contract as written; that by letter dated June 29, 1953, served upon respondents by petitioners on that date, demand for performance was again made, the petitioners representing that they were ready, willing and able to perform the contract, including the preparation of the lease mentioned in the contract, but that in view of the refusal of the respondents to perform petitioners would not proceed to have the lease prepared until petitioners were informed by respondents or their broker that the respondents would perform their part of the contract; that respondents, however, ever since June 21, 1953, have unequivocally refused and continue to refuse to perform their contract, Exhibit "A" of the bill of complaint.

The chancellor further found that the form of the lease attached as Exhibit "I" contained all the special, specific provisions set forth in the contract to execute a lease, and in addition thereto, "all of the usual covenants contained in leases of a similar type in this community and particularly *similar leases to apartment-hotel properties situate in the Waikiki portion of the City of Honolulu.* The Respondents having refused to answer, the Court finds that said lease is in substantial compliance with said contract to give a lease and should thus be executed by the Respondents." (Emphasis added.)

The chancellor, taking the itemized statement in the lease proposal, further found and assessed the amount of damages suffered by petitioners for each month's delay by respondents in executing the proposed lease.

To take up the first ground of the demurrer, that the agreement was vague, indefinite and uncertain and that it appears from the complaint that the parties intended further negotiations with respect to the terms and conditions and covenants to be included in the proposed lease,

we have the question whether in this jurisdiction a contract to enter into a lease of income-producing apartment property for a term of 65 years is sufficiently definite to be specifically enforced by the lessees of the contract when the contract contains (1) the names of the parties, (2) the description of the premises, (3) the term of years, (4) the annual rental, (5) the payment of taxes, (6) the payment of insurance, (7) the payment of assessments, (8) the payment of any other charges, (9) the payment for furniture, (10) the payment of additional percentage rental, (11) alterations and additions to premises, (12) consent of lessor on sale of lease, (13) a reservation of an apartment for the lessors for a specified period, and (14) that the lease should contain "all other usual covenants."

There is little or no conflict of authority upon the general principle that where a contract is complete and certain as to the essential and material terms, parts and elements of a lease, specific performance will be granted; nor if the contract to lease or the negotiations of the parties affirmatively disclose or indicate that *further* negotiations, terms and conditions are contemplated, the proposed lease is considered incomplete and incapable of being specifically enforced.

From these elementary generalizations we face the question of what are the essential elements or material and necessary details in a contract to lease to justify a decree of specific performance.

Many authorities hold that there need be only a definite agreement as to the name of the parties to the lease, the extent and bounds of the property leased, a definite and agreed term, a definite and agreed price or rental, and the time and manner of payment. Where there are these essentials and *no expectation of further provisions to be negotiated later,* such a contract to lease is suffi-

ciently definite for enforcement by a decree of a court of equity. The usual covenants and provisions of other leases of similar property in the vicinity where the property is situated are deemed contemplated by the parties and further negotiations are unnecessary. There are numerous authorities that where the material elements of a contract to lease are definitely agreed upon but a contract is silent as to the usual covenants, *such covenants will be implied in law.*

However, the important element in the cases purporting to set forth the so-called essential elements as being only the names of the parties, a description of the property to be leased, the amount of rental, the terms of payment, the term and duration of the lease, is that there is *no expectation of further provisions to be negotiated later.* Under such circumstances obviously there are present all the essentials necessary for the enforcement of a valid contract and the court may well hold that the usual covenants are implied when such condition exists.

The present case obviously contains not only the so-called essential elements but many more and has detailed statements showing the *definite and final intent* of the parties and that no further negotiations were contemplated.

The usual covenants can be readily ascertained and were ascertained by undisputed testimony of an expert in conveyancing and the chancellor so found that they were the usual covenants. There can be no uncertainty where the contract itself fixes the method of ascertaining any term not fully expressed. For example, it has been held that where the purchase price is to be fixed by arbitrator, the terms are definite.

None of these cases cited by the appellants is opposed to the doctrine heretofore stated as to requirements for specific performance.

One of the cases cited by appellants, *Scholtz* v. *North-western Mutual Life Ins. Co.*, 105 Fed. 573, to the effect that if any of the terms are left open *to be settled in future conferences* between the lessor and lessee, such is not a complete agreement, the minds of the parties are not fully met, and the court will not make a contract for them. This case points out, however, that agreements which are complete and definite to the extent heretofore described, that is, where they describe the premises, specify the time the lease is to run, the amount of rent to be paid, etc., are *not rendered too indefinite for enforcement* if they contain a stipulation for the insertion of "usual covenants." This decision points out that if either the lessor or lessee desires any unusual or special covenant to be included within the lease he should stipulate for its insertion in the preliminary agreement, which in the absence of such a stipulation the law will imply that the parties had in view the usual covenants or the usual form of lease, having reference to the character of the demised premises, the place where they are situated, citing Taylor, *Landlord and Tenant*, 8th edition, section 44, and other cases.

In the case of *Keys* v. *Klitten*, 21 Wash. (2d) 504, 151 P. (2d) 989, the court did refuse to enforce what the parties termed was to be a "proper" lease. Even in this case the chief justice wrote a dissent in which he thought the majority had given undue consideration to the term "proper."

The case of *Bennett* v. *Moon*, 110 Neb. 692, 194 N. W. 802, 31 A. L. R. 495, contains a discussion of many of the authorities. Other cases containing discussions are: *Reno Club* v. *Young Investment Co.*, 64 Nev. 312, 182 P. (2d) 1011, 173 A. L. R. 1145; *Bushman* v. *Faltis*, 184 Mich. 172, 150 N. W. 848 (a contract for a 99-year lease where specific performance was granted); *Morgan* v. *Firestone*, 68 Idaho 506, 201 P. (2d) 976; *Dodge* v. *Davies*, 181 Ore. 13, 179 P.

(2d) 735; *Scannell* v. *American Soda Fountain Co.,* 161 Mo. 606, 61 S. W. 889, 31 A. L. R. 504; *De Luiz* v. *Ramos,* 31 Haw. 800; Jones on *Landlord and Tenant,* § 137a, pp. 170-171, points out that where "the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed * * * *."

It has been urged that the rule heretofore discussed of the law implying usual covenants should not apply to a long-term lease because execution of such leases has not become so common as to establish a custom and make it possible to say what covenants and agreements would usually come into and become a part of such lease.

The matter is discussed in *Bushman* v. *Faltis,* 184 Mich. 172, 179, 180, where the court said: "Can it then be said that the agreement to lease is so incomplete or uncertain as to make it impossible to decree specific performance? There is no uncertainty as to the names of the parties to the lease; there is no indefiniteness as to the description of the premises leased; no uncertainty as to the length of time the lease is to be in force nor as to the annual rentals, nor as to the amount to be paid in case of sale. If the lease provided for in the agreement were for any ordinary short-term lease, the well-established rule might be applied that the law will imply that a lease with usual covenants required by such leases shall be drawn and signed. *Church* v. *Brown,* 15 Vesey, Jr., 258; 1 Tiffany, Landlord and Tenant, §§ 66, 68. However, the provision in the instant case being for a 99-year lease, and it not appearing that the execution of 99-year leases has become so common as to establish a custom and make it possible to say what covenants and agreements would usually go into and become a part of such a lease, this rule cannot be said to apply. However, as the agreement to lease sets forth definitely in our opinion all the essential require-

ments of a lease (see *Cochrane* v. *Mining Co.,* 16 Colo. 415 [26 Pac. 780]; Jones, Landlord and Tenant, § 137a; 1 Tiffany, Landlord and Tenant, § 66), it cannot be said, because other and different covenants might have been agreed upon, that what in fact has been provided for is too uncertain and indefinite to permit of specific performance.

"We are of the opinion that the agreement, standing by itself, is a complete contract, certain in its terms, and satisfies the statute of frauds (3 Comp. Laws, § 9511, 4 How. Stat. [2d Ed.] § 11395)." This was a 99-year lease.

It is obvious that the appellants carefully considered and set forth in their lease proposal the precise "special" covenants they wanted in the lease (*Bushman* v. *Faltis, supra*) and then added that "all other usual covenants will be matter in lease."

Mr. Howard Moore, a member of the bar and an expert in realty transactions, testified as to quite a number of long-term leases he had recently prepared for Waikiki apartments. He further testified that all of the provisions agreed upon (except the $5,000 for furniture) were contained in Exhibit "I", the proposed lease. He enumerated the various provisions such as payment of taxes, insurance and other charges, etc. He testified all other usual covenants were included in the lease and these are fairly stereotype provisions such as to repair, maintain fences, sidewalks, sewers, drains, observe the rules and regulations of the board of health, keep the premises in repair, not to assign or mortgage without the consent of the lessors, etc.; that such covenants are generally included in long-term as well as short-term leases in Hawaii.

Obviously there is no such indefiniteness in the contract as to prevent specific performance. Further, no future negotiations or terms were contemplated as shown

by the undisputed testimony of Mr. Brooks and of Mr. Francone and the document itself.

Mr. Brooks testified that at the time of the signing of the contract there was a meeting between petitioners and respondents and the lease was discussed at great length, including all the provisions that usually go into a lease; that the discussion lasted from about 12:00 o'clock noon until about 2:30 o'clock p.m.; that there were several changes made in the provisions, such as the 51-year term was increased to a 65-year term, reservation was made of the dining room suite, and of certain other furniture and fixtures. He explained to the four parties in general what the usual covenants would be; all parties appeared satisfied, the deal was signed and they all took a drink.

Mr. Francone, in addition to testifying as to the various demands upon respondent-appellants to carry out the contract and of their refusal so to do, testified as to the meeting at the time of the signing of the contract; that the other usual covenants were explained at length; that after the signing of the contract the McClays seemed satisfied.

The method of attempting to cancel the contract by the respondents-appellants shows that they regarded the contract as closed and not subject to further negotiations.

In addition to Mr. Moore's testimony, we might well take judicial notice of the fact that in Hawaii long-term leases of hotel sites, apartments, business sites, residences and agricultural corporations are not unusual or exceptional but *many,* if not *most,* of the beach hotels and apartments are built upon such leasehold premises, as are residences and business establishments. Large areas of land on the island of Oahu are owned by estates which never sell but merely lease their holdings, much of it for hotels, apartments, businesses, residences and agricultural purposes. Many cases involving long-term leases have been before the courts of this Territory off and on for

several generations, particularly many involving trust estates and duties of trustees.

The other point in the demurrer is that the petitioners had failed to perform the condition precedent, that is, make a tender to respondents. This point we think needs little discussion as there was an unequivocal representation made by the lessors prior to the date of performance which continued to the date of performance to the effect that the lessors will not perform the contract as written which was followed by demands for performance upon the lessors by the lessees. This, as a matter of law, waives or excuses tender by the lessees when the lessees at all times have been ready, willing and able and desire to perform their part of the contract. This is particularly true where, as here, the lessors repudiated their contract by an attempted cancellation. The acts of the respondents have clearly made any tender unnecessary by petitioners.

The doctrine that equity does not require a useless formality is stated in the following authorities which are supported by a multitude of cases:

"An actual tender by the plaintiff before suit brought is unnecessary, when, from the acts of the defendant or from the situation of the property, it would be wholly nugatory — a mere useless form. If, therefore, before or at the time of completion, the defendant has openly and avowedly refused to perform his part, or declared his intention not to perform at all events, then the plaintiff need not make a tender or demand of performance before bringing his suit; it is enough that he is ready [in] all events, then the plaintiff need not make a tender or demand of performance before bringing his suit; it is enough that he is ready and willing, and offers to perform in his pleading." (Pomeroy's *Specific Performance of Contracts,* 3d ed., § 361, p. 768.)

"It is an old maxim of the law that it compels no man

to do a useless act, and this principle was applied in the time of Coke, if not before, to the case of a conditional promise. If the promisor is not going to keep his promise in any event, it is useless to perform the condition and the promisor becomes liable without such performance. So if before the time for the performance of a condition by a promisee, the promisor leads the promisee to stop performance by himself manifesting an intention not to perform on his part, even though the condition is complied with, 'it is not necessary for the first to go further and do the nugatory act.' " (Williston on *Contracts*, Rev. Ed., vol. 3, § 698A, pp. 2008, 2009.)

"Whatever differences of opinion there may be as to some phases of the subject (of tender) the recent cases are in harmony with the earlier decisions in holding that a tender is unnecessary if the vendor has repudiated the contract." (Ann. Cases, 1913 C 648.)

"A formal tender by the purchaser is excused where the tender would be a useless and idle ceremony. * * * A tender is excused where defendant makes an unwarranted demand on the purchaser, * * *

"The necessity of a tender is dispensed with where defendant repudiates the contract, as by failing or refusing to perform, or makes any declaration which amounts to a repudiation, or takes any position which would render a tender, as long as the position taken is maintained, a vain and idle ceremony. * * *

"Where a tender of the consideration is rendered useless by the conduct of defendant, it is sufficient on the part of plaintiff to set forth in his complaint that he is ready, able, and willing to pay the consideration, or that plaintiff pays the consideration into court." (81 C. J. S., *Specific Performance*, § 103, pp. 623, 624; see also 52 Am. Jur., Tender, §§ 3, 4, 5, pp. 216-219.)

In conclusion, the findings of the chancellor that:

(1) "The terms of said contract were mutual, and are sufficiently definite and certain to enable this Court to order the contract specifically enforced."

(2) "That Respondents, by their unequivocal statements to Petitioners commencing on June 21, 1953, and continued through July 1, 1953, to the effect that they (Respondents) would not perform the contract they had executed with Petitioners on June 20, 1953, Exhibit 'A' aforesaid, particularly when the Petitioners demanded performances several times prior to July 1, 1953, therein advising Respondents that Petitioners are ready, willing and able to perform Petitioners' part of the contract, waived or excused any tender which would have otherwise been required of Petitioners under said contract as a condition precedent to the filing of this suit against Respondents for specific performance of said contract."

(3) "That the form of lease attached hereto as Exhibit 'I' relates to the identical real property described in Exhibit 'A' aforesaid, and contains all of the special, specific provisions set forth in the said contract to execute a lease, being Exhibit 'A' aforesaid, and in addition thereto, all of the usual covenants contained in leases of a similar type in this community and particularly similar leases to apartment-hotel properties situate in the Waikiki portion of the City of Honolulu," are fully justified by the evidence.

Affirmed.

*R. L. Dodge* (*Heen, Kai, Dodge & Lum* with him on the briefs) for respondents-appellants.

*D. C. Hamilton* (*Henshaw, Conroy & Hamilton* with him on the brief) for petitioners-appellees.