J. MARSHALL ROBBINS ENTERPRISES, INC. v EWALD STEEL
COMPANY

1. DAMAGES—BREACH OF CONTRACT—MITIGATION OF DAMAGES—AF-
   FIRMATIVE DEFENSES—BURDEN OF PROOF.

   A plaintiff in a breach of contract action must make every
   reasonable effort to mitigate damages; a defense that plaintiff
   failed to mitigate damages, however, is an affirmative one, and
   proof of plaintiff's failure to mitigate rests upon the defendant.

2. DAMAGES—BREACH OF CONTRACT—MITIGATION OF DAMAGES—MEA-
   SURE OF DAMAGES—THIRD PARTIES.

   Damages in a breach of contract action were properly determined
   on the basis of the contract amount rather than being limited
   to only those sums the plaintiff had committed to the endeavor
   at the time of the breach where, had the plaintiff terminated
   the endeavor at the time of the breach in order to mitigate
   damages, plaintiff would have been liable to a third party by
   reason of a breach of contract with that party; since plaintiff is
   under the duty to make only "reasonable" efforts to mitigate
   damages, plaintiff need not take the unreasonable action of
   breaching the contract with the third party.

3. DAMAGES—BREACH OF CONTRACT—ORAL CONTRACTS—MEASURE OF
   DAMAGES—REDUCTION OF DAMAGES.

   A trial judge could have reasonably concluded from evidence
   presented in a breach of contract action involving an oral
   contract vague in its provisions that in return for a sponsorship
   fee the defendant had expected that a sponsored racing automo-
   bile would appear in all 11 races as originally proposed; there-
   fore, a proportional reduction of the damages by reason of the
   fact that only 9 of the 11 races were entered was proper.

Appeal from Wayne, Harry P. Newblatt, J. Sub-
mitted Division 1 November 13, 1973, at Detroit.
(Docket No. 15465.) Decided April 26, 1974.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 22 Am Jur 2d, Damages § 203.
[3] 22 Am Jur 2d, Damages §§ 46–49.

Complaint by J. Marshall Robbins Enterprises, Inc., against Ewald Steel Company for breach of contract. Defendant appeals. Affirmed.

*Bodman, Longley, Bogle, Armstrong & Dahling* (by *Walter O. Koch),* for plaintiff.

*Kasoff, Young, Gottesman, Kovinsky & Friedman,* for defendant.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. J. Marshall Robbins, an automobile racing enthusiast, decided to build and race an automobile in a Can-Am series of races. While the total prize money for the series was in the amount of $1,000,000, the economics of automobile racing dictated the securing of outside sponsorship to defer the cost of building, preparing, and racing the automobile. Robbins was able to secure sponsorship in the amount of $50,000 from one Jeffries.

Robbins, in his search for additional financial help, contacted a prominent Detroit area sportscaster for assistance. The latter was acquainted with Harry Levine, defendant's president, and arranged for a meeting between Levine and Robbins. At that meeting held on February 13, 1969 Levine was shown a brochure describing Robbins' proposal. Robbins indicated that the automobile would be driven in the 11 races in the series by Ronnie Buckman and would carry the banner "Robbins-Jeffries Ewald Steel Special" emblazoned on its side. Robbins further indicated that a press conference would be held announcing the Ewald

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Steel sponsorship. Levine understood that the consideration for the $85,000 sponsorship money provided by his company was the publicity involved, and that he would not share in any prize winnings. Levine orally agreed to sponsor the endeavor to the extent of the aforementioned $85,000, the first $15,000 to be paid immediately.

On February 15, 1969 a check in the amount of $15,000 was delivered to Robbins. Robbins proceeded to order parts necessary for the construction of the automobile. In early March Robbins called Levine and indicated that due to a delay in the preparation of the automobile only 9 of the 11 races would be entered. Robbins further indicated that since the driver, Ronnie Buckman, had been injured, Peter Revson would be substituted as the driver. Levine said nothing about cancelling the contract because of these changes at that time.

In mid-March the press conference was held announcing the sponsorship by defendant corporation. Thereafter Levine, through an agent, informed Robbins that defendant wished to terminate the sponsorship agreement. Attempts were made to secure an alternate sponsor; however, the attempts were of no avail. The automobile was completed and was raced in the nine races with the defendant's name on the side of the vehicle. Defendant has steadfastly refused to pay the $70,-000 balance of the $85,000 originally agreed upon. The trial court determined that plaintiff was entitled to the contract amount less a reduction of two elevenths, to reflect the failure of plaintiff to enter the automobile in 2 of the 11 agreed-upon races. Accordingly judgment in favor of plaintiff was entered in the amount of $54,545.43. From that judgment defendant appeals as of right.

Defendant on appeal does not attack the legality

of the contract, but rather disputes the amount of damages. Counsel argues with considerable vigor that the proper measure of damages was the amount expended or committed at the time of the breach, rather than the unpaid balance owing on the contract amount. In essence defendant's argument is that in accordance with plaintiff's duty to mitigate damages, plaintiff is entitled to only those sums he had committed to the endeavor at the time of the breach.

It is well established that the plaintiff must make every reasonable effort to mitigate damages. *Edgecomb v Traverse City School Dist,* 341 Mich 106; 67 NW2d 87 (1954); 22 Am Jur 2d, Damages, § 36, p 60. Such a defense, however, is an affirmative one; and proof of plaintiff's failure to mitigate rests upon the defendant. *Fothergill v McKay Press,* 374 Mich 138; 132 NW2d 144 (1965).

The question that must be answered is whether plaintiff should have ceased the preparation of the automobile at the time of the breach in order to mitigate the damages. It must be remembered that plaintiff had entered into a sponsorship contract not only with defendant but also with Jeffries; thus, had plaintiff ceased the construction and preparation of the automobile and failed to race the automobile, plaintiff would have breached the contract with Jeffries.

Counsel have been unable to furnish us with any Michigan authority precisely on point. Recourse to other authorities has been instructive. In 17 Am Jur 2d, Contracts, 444, p 903, it is stated:

"There are exceptions to the rule that a contracting party must stop performance when directed to do so by the other party. For instance, where the plaintiff is not interested solely in profit from the agreement but must

proceed with the work in order to fulfill contractual obligations to others * * * ".

Further, in 11 Williston on Contracts (3rd ed), § 1302, pp 84, 85, it is stated:

"It need not be contended that in every case the principle of damages in question will deprive the plaintiff of the right to continue performance of the contract after it has been repudiated. There may be cases where so doing will not needlessly enhance damages, and it is a question of fact in every case whether such enhancement of damage will be caused.

\* \* \*

"Also, where a seller or manufacturer is under a duty to more than one person to perform the contract, a countermand by one, as it will not justify breach of contract with the others, should be inoperative."

Were we to hold that plaintiff must terminate the endeavor in order to mitigate damages, plaintiff would be confronted with a "Hobson's choice". If plaintiff did not terminate he would suffer grievous financial losses, since defendant would be liable only for those sums expended or committed prior to the breach; however, if plaintiff did terminate, plaintiff would be liable to the third party by reason of the breach of the contract with that party. Since plaintiff is only under the duty to make "reasonable" efforts to mitigate damages, plaintiff need not take the unreasonable action of breaching the contract with the third person. Under these circumstances the only reasonable action on plaintiff's part was to attempt to secure an alternate sponsor. Since plaintiff attempted to find an alternate sponsor, plaintiff made every reasonable effort to mitigate the damages. Accordingly the trial court properly determined damages on the basis of the contract amount.

Plaintiff, by way of a cross-appeal, raises the question of whether the trial court properly reduced the amount of the damages to reflect the fact that only 9 of the 11 races were entered. Since this was essentially an oral contract, and therefore vague in its provisions, the trial judge could have reasonably concluded from the evidence that in return for its $85,000 sponsorship fee defendant had expected that the sponsored car would appear in all 11 Can-Am races. Thus, plaintiff's failure to fulfill that expectation should properly result in a proportional reduction in compensation.

Affirmed. No costs as neither side has prevailed in full.

All concurred.