THERESA K. MALANI, Plaintiff-Appellee, Cross-Appellant, *v.* W. LAWRENCE CLAPP and CLARENCE O. FURUYA, Defendants-Appellants, Cross-Appellees

NO. 5472

NOVEMBER 26, 1975

OGATA, ACTING C.J., and MENOR, J., and Circuit
Judge LANHAM in place of RICHARDSON, C.J.,
Disqualified, and Circuit Judge HAYASHI in place
of KOBAYASHI, J., Disqualified, and Circuit Judge
KATO Assigned by Reason of Vacancy

OPINION OF THE COURT BY MENOR, J.

This is an action for breach of a contract to lease, predicated upon the alleged failure of the prospective lessees to make certain payments and to execute a lease to real property. From a judgment awarding damages to the plaintiff owner of the premises, the defendants appeal. The plaintiff cross-appeals, claiming that she was entitled to a larger award.

Theresa K. Malani, the plaintiff below and appellee, cross-appellant herein, is the owner of certain real property situated at 1031 Maunaihi Place, in Honolulu. On August 18, 1966, she applied to the City and County of Honolulu for a building permit for the construction of an apartment building

on the premises. Her application was granted, and the permit was issued on April 18, 1967. It allowed for the construction of an apartment building with a floor area twice the size of the land area, otherwise described as "a building with 200% density." This permit was valid and subsisting at all times relevant hereto.

In early May, 1971, W. Lawrence Clapp and Clarence O. Furuya, the defendants below and appellants, cross-appellees herein, became interested in the property, and asked one Walter Groshong, a salesman for J. M. Urner, Inc., a real estate brokerage firm, to investigate the premises in their behalf. Upon learning from Groshong of the permit authorizing the construction of an apartment building twice the size of the land area, Clapp and Furuya engaged Groshong's firm to purchase the property for them in fee. Their offer to purchase, however, was rejected by Malani.

On June 10, 1971, Clapp and Furuya, through Groshong, offered to lease the premises. Deeming the proffered terms unsatisfactory, Malani again rejected their offer. Negotiations, however, continued and on June 30, 1971, Clapp and Furuya executed a Deposit, Receipt, Offer and Acceptance agreement [DROA], offering to lease the property for 70 years. The offer was accepted by Malani on July 2, 1971, and the closing date of the transaction was established at August 2, 1971. Suit was filed by Malani on September 24, 1971, alleging breach of the DROA by Clapp and Furuya. Following a trial without a jury, the trial judge awarded Malani damages in the sum of $40,000.

In their appeal Clapp and Furuya urge upon this court the following grounds: (1) That the plaintiff, Malani, had failed to prove the existence of a contract capable of enforcement; (2) that, assuming the existence of an enforceable contract, Malani had failed to prove that she was willing and able to perform; and (3) that, in any event, Malani was entitled to not more than nominal damages.

Malani, on the other hand, asserts that the trial court erred in applying the measure of damages that it did, thereby improperly limiting her damages to the amount actually awarded to her.

I

We turn first to the Clapp and Furuya contention that Malani had failed to prove the existence of a contract capable of enforcement.

It is an elementary rule of contract law that there must be mutual assent or a meeting of the minds on all essential elements or terms in order to create a binding contract. *Carson v. Saito,* 53 Haw. 178, 489 P.2d 636 (1971); *Honolulu Rapid Transit Company Limited v. Paschoal,* 51 Haw. 19, 449 P.2d 123 (1968). And where a contract is complete and certain with respect to the essential and material terms and conditions of a lease, and no further negotiations as to other essential matters are contemplated, such a contract to enter into a lease will be enforced. *Francone v. McClay,* 41 Haw. 72 (1955); *Lahaina-Maui Corporation v. Tau Tet Hew,* 362 F.2d 419 (9th Cir. 1966).

A contract to lease will be deemed to be sufficiently definite and capable of enforcement where it contains the names of the parties, a description of the property to be leased, the amount of rental to be paid, the terms of payment, the duration of the lease, and no further negotiations as to other provisions are contemplated. *Francone v. McClay, supra.*

The DROA here named the parties to the agreement, described the property to be leased, specified the amount of rental to be paid and the terms of payment, and determined the duration of the lease. Additionally, it provided that Clapp and Furuya would have the right to mortgage their lease, and that Malani would subordinate her fee interest upon certain terms and conditions. Malani warranted that the property was zoned A-3 with 200% density for building purposes, and that the building permit issued in 1967 was still valid and subsisting. She also agreed to assign and transfer to Clapp and Furuya, on or before the closing date, all original building plans and architectural and engineering drawings and specifications upon which the building permit was executed and issued. No further negotiations regarding the essential terms of the lease were contemplated.

Clapp and Furuya nevertheless argue that the DROA is invalid and unenforceable under *Lahaina-Maui Corporation v. Tau Tet Hew, supra*. In that case the Ninth Circuit Court of Appeals, applying Hawaii law as enunciated by *Francone*, held that a subordination clause which was indefinite and uncertain rendered the entire contract to lease unenforceable. There the agreement had specified the names of the parties, described the property to be leased, the terms of the lease, and the agreed annual rental. In addition it provided:

> Said lease shall contain the standard provisions normally contained in a lease for similar property situate in the State of Hawaii together with the provision that *the Lessor (sic) shall subordinate their fee to permit the Lessee to obtain financing which provision is by way of example, but not by way of limitation*. [362 F.2d at 420] (Emphasis added)

In holding that the underscored provision rendered the agreement incomplete with regard to a material term to be included in the subsequent lease contract, and therefore unenforceable, the federal court stated:

> Appellant challenges the district court's holding that the subordination provision is uncertain and indefinite as a matter of law. Here it is urged that the language is plain and unambiguous, that no further negotiations were intended by the parties, and that the buyer and sellers mutually agreed upon an unconditional subordination clause.
>
> We cannot accept appellant's characterization of the subordination provision. This provision, on its face, implies that further negotiations were contemplated. It is unreasonable to presume that the property owners would agree at this preliminary stage of the transaction to the encumbrance of their fee interest by a lien or liens, indefinite in amount, and securing a loan or loans with an unspecified rate of interest, term and manner of repayment. It is equally unlikely that the property owners, who are risking their fee interest by agreeing to subordinate, would be unconcerned with the source of the loans obtained by the lessee, and the ultimate use of the proceeds

of the loans. The option stipulated only that subordination was to allow the lessee to obtain "financing." [362 F.2d at 422]

Clapp and Furuya's reliance upon *Lahaina-Maui Corporation v. Tau Tet Hew, supra,* is misplaced. We agree that the disputed clause in that case was too general and overly broad. The subordination provision with which we are here concerned, however, provides as follows:

If subordination of the fee is desired and required by Buyer, the seller agrees to subordinate the fee value of the property for Buyer's construction and improvement loans if requested by Buyer but said subordination shall be only for the construction period and in any event shall not exceed two (2) years, and only if executed the Seller shall have as compensation therefor, Seller's choice of any apartment for the term of the lease rent free and if and when converted to a condominium the Seller shall have full title to said apartment for the balance of the lease term. Buyer agrees to personally guarantee the Promissory Notes. Buyer agrees to supply a financial statement to Seller on request upon indication of Seller's acceptance but prior to acceptance, showing Buyer aggregate net worth of $2,000,000.00.

It is readily apparent that the objectionable features of the clause in *Lahaina-Maui* are not present here. Malani expressly limited herself to a fee subordination of not more than two years. Subordination of the fee was confined to construction and improvement loans. The type of construction and the nature of the improvements Clapp and Furuya could undertake were circumscribed by the building permit, which had been issued under standards applicable prior to the effective date of the City and County of Honolulu's Comprehensive Zoning Code. This permit which allowed for the construction of an apartment building with 200% density went to the heart of the entire transaction, insofar as Clapp and Furuya were concerned. In the original application, the estimated cost of the proposed building was established at $1,000,000. This was in 1967. The DROA was entered into in 1971. Clapp testified that they estimated their project cost to be in the

neighborhood of $1,300,000. The DROA expressly provided that Clap and Furuya would furnish Malani with a financial statement, at her request on or before her acceptance of the DROA, showing their aggregate net worth to be in excess of $2,000,000 which was twice the amount originally considered necessary for the construction of an apartment building of 200% density upon the subject premises. The DROA also required Clapp and Furuya to personally guarantee these construction and improvement loans. Malani could not have protected her fee interest much more than she actually did.[1]

The trial court correctly held that the contract between the parties was valid and enforceable.

## II

The DROA executed by the parties required Clapp and Furuya to pay a consideration of $75,000, payable as follows: $10,000 as an initial deposit; $30,000 on or before Malani's acceptance of their offer; and the balance of $35,000 on or before the closing date. To meet the initial payment requirements, Clapp issued and delivered his check for $5,000 and Furuya did likewise. As it turned out, Furuya had earlier stopped payment on his check for $5,000, so that only $5,000 was actually paid on the initial deposit requirement of $10,000. Malani accepted Clapp and Furuya's offer on July 2, 1971. The sum of $30,000 became due and payable on that date. The DROA provided for a closing date of August 2, 1971. This closing date was later extended to September 2, 1971, by the broker, J.M. Urner, Inc., presumably on the authority of the DROA. However, despite repeated demands made upon Clapp and Furuya by Malani's attorneys for the

---

[1] That this particular subordination clause was of no real practical concern to Clapp and Furuya, who were knowledgeable businessmen, is suggested by the following entry from the notes of the transaction kept by Groshong, who prepared the DROA and who had been their intermediary in the negotiations with Malani:

Larry [Clapp] called and said result of conference with Clarence [Furuya], not possible for them to go on either deal . . . Will offer $75,000 lease premium for 70 yr. lease, with lease rental on $15-$18-$21 basis. Will eliminate subordination clause as worthless, but OK to leave it in but may go out if she trys (sic) to increase offer. Clarence has checked out financing possibilities on mainland.

payment of the amounts then due and owing under the DROA, only Clapp's original deposit of $5,000 was ever made. Clapp and Furuya also failed to furnish Malani, at her request, with a financial statement showing their aggregate net worth to be $2,000,000 as required by the DROA. A lease intended to embody the terms of the DROA, and to which no valid objection had been raised by Clapp and Furuya, was deposited into escrow on August 2, 1971, for their execution. This they refused to do. Suit for breach of contract was filed by Malani on September 24, 1971.

The trial court properly found that Clapp and Furuya had breached their contract to lease. Clapp and Furuya, who had rested without presenting evidence following the close of the plaintiff's case, nevertheless argue that the trial court should have dismissed Malani's complaint for failure to establish a prima facie case. It is their contention that it was incumbent upon Malani to show "either that [s]he has performed the contract or that during the term of the contract [s]he was ready, willing and able to perform." *Low v. Honolulu Rapid Transit Company, Limited*, 50 Haw. 582, 585, 445 P.2d 372, 376 (1968).

Based on the evidence before it, the trial court found "[t]hat Plaintiff Malani performed her part to be performed pursuant to the DROA (Exhibit 8), and/or was ready, willing, and able to perform any portion of performances yet to be performed on her part." We agree with this finding.

The record shows that on July 21, 1971, Malani's attorney wrote to Clapp advising him that Malani was prepared to perform in full under the terms of the DROA and that Clapp could pick up the plans and specifications at his office. On July 23, 1971, Malani's attorney wrote to Clapp demanding the payment into escrow of the sum of $35,000 as required by the DROA, and further requesting that Clapp furnish Malani with their financial statement reflecting a net worth of $2,000,000 as provided in the DROA. On July 28, 1971, Malani's attorney wrote to Clapp advising him that "as of this date no word has been received as to any reason why you [Clapp and Furuya] should not comply with the terms of the executed contract to enter into a lease." In his letter Malani's

attorney again advised Clapp that all performances required on the part of Malani had been completed and whatever remained to be done by her would be completed concurrently with the execution of the lease. On July 29, 1971, Malani's attorney transmitted to escrow the plans and specifications for the property, as well as the building permit which had been the key to the negotiations. On August 2, 1971, Malani's attorney transmitted to escrow the proposed lease between the parties and a written assignment of the plans, specifications, and building permit in favor of Clapp and Furuya. In his letter of transmittal, Malani's attorney advised escrow that she stood "ready, willing and able to execute the foregoing documents and any other documents required for the consummation of the transaction contemplated by the [DROA]." Any further tender of performance on the part of Malani was rendered unnecessary by the prospective lessees' conduct. *Francone v. McClay, supra.*

The record before us contains ample evidence from which the trial judge could have found, as it did, that during the term of the contract Malani was always ready, willing and able to perform her part of the bargain. *Cf. Low v. Honolulu Rapid Transit Company, Limited, supra. See also Barkhorn v. Adlib Associates, Inc.,* 222 F. Supp. 339 (D. Haw. 1963).

### III

Clapp and Furuya, in their appeal, and Malani, in her cross-appeal, question the measure of damages applied by the trial court.

The trial court found that Malani had been damaged in the sum of $40,000 and entered judgment accordingly. The DROA required an initial deposit of $10,000 and an additional sum of $30,000 upon acceptance by Malani of Clapp and Furuya's offer to enter into a contract to lease Malani's property. Both of these amounts were to be paid and applied to the total consideration of $75,000. Apparently, the trial court

simply took the initial figure of $10,000, added the figure of $30,000, and arrived at an award of $40,000.[2] The parties urge that the trial court erred. We agree.

As a general rule, the measure of damages recoverable by the owner of the property for the prospective lessee's breach of contract to lease is the excess, if any, of the agreed rent over the fair rental value of the premises. *Branning Mfg. Co. v. Norfolk-Southern R.R.*, 138 Va. 43, 121 S.E. 74 (1924); *Jefferson Realty v. United States Rubber Co.*, 222 So.2d 738 (Fla. 1969). Fair rental value is to be ascertained by proof of what the premises would rent for on the open market, or by evidence of other facts from which the fair rental value of the property may be determined. *See Branning Mfg. Co. v. Norfolk-Southern R.R., supra; Hawkinson v. Johnston,* 122 F.2d 724 (8th Cir. 1941); 11 Williston on Contracts, 3d ed., p. 566-567, Section 1404A.

Following the refusal or inability of Clapp and Furuya to perform under the terms of the DROA, and after her suit was filed, Malani entered into a lease with Financial Consultants, Inc. Malani in her cross-appeal contends that the terms of the lease represented the fair rental value of the premises and urges this court to apply the proper measure of damages and mandate the entry of judgment in her favor for the sum of $166,000. In support of her position she points to the following findings by the trial court:

> That in order to mitigate her losses, Plaintiff sent out invitations to bid on the property and that the highest financial offer received was an offer by Financial Consultants, Inc. for a 65 year lease; that a lease was entered into between Plaintiff and Financial Consultants, Inc. on December 20, 1971, but effective December 1, 1971, (Exhibit 14); that a building is now being constructed by Financial Consultants, Inc. on the subject premises.

---

[2] Following oral argument the trial court stated:

THE COURT: Suppose the Court says, all right, since the measure of damages — evidence of measure of damages is not satisfactory — is satisfactory that the amounts that come up are astronomical, the Court won't apply it. I think the next best approach would be to give the non-defaulting seller the amounts of deposits that she should as of the date of signing the lease which is $40,000. I think that is fair. I will sign an order to that effect.

That there being no evidence to the contrary, the action of the Plaintiff in soliciting invitations to bid after the Defendants' breach and thereupon accepting the highest financial offer for a lease of the property was reasonable and was calculated to mitigate her damages.

On the issue of mitigation, the court was correct in its conclusion. In contract or in tort, the plaintiff has a duty to make every reasonable effort to mitigate his damages. *Enco, Incorporated v. F. C. Russell Company,* 210 Ore. 324, 311 P.2d 737 (1957). *See Branning Mfg. Co. v. Norfolk-Southern R.R., supra; Izumi v. Park,* 44 Haw. 123, 351 P.2d 1083 (1960); *Franco v. Fujimoto,* 47 Haw. 408, 390 P.2d 740 (1964). The burden, however, is upon the defendant to prove that mitigation is possible, and that the injured party has failed to take reasonable steps to mitigate his damages. *Cobb v. Osman,* 83 Nev. 415, 433 P.2d 259 (1967); *Enco, Incorporated v. F. C. Russell Company, supra, Kulm v. Coast-to-Coast Stores Central Organization, Inc.,* 248 Ore. 436, 432 P.2d 1006 (1967); *J. Marshall Robbins Enterprises, Inc. v. Ewald Steel Company,* 52 Mich. App. 599, 218 N.W.2d 125 (1974); *Franco v. Fujimoto, supra.*

Undoubtedly, proof bearing upon mitigation may oftentimes supply the evidence required to prove damages. *See Branning Mfg. Co. v. Norfolk-Southern R.R., supra.* But the burden of proving damages is always upon the plaintiff, and the foregoing findings fall short of a clear and definitive indication that Malani had proved an essential component of her asserted measure of damages. It was for her to show that the terms of her lease with Financial Consultants, Inc., represented the fair rental value of the premises. Proceeding as it did on an erroneous theory of damages, the trial court failed to come to grips with this particular aspect of the plaintiff's case. The weight of the evidence was for the trial judge to determine, *Wall v. Focke,* 21 Haw. 551 (1913), and we are uncertain as to how the court might have viewed and weighed the evidence had it done so in the light of the proper controlling substantive principles of law.

Clapp and Furuya claim that the judgment for Malani should not have been for more than nominal damages. Ma-

lani, on the other hand, urges that she should have judgment for not less than $166,000. On the state of the record before us, we are not inclined to order a modification of the judgment as requested by the parties. This is a matter for the trial court to determine upon retrial through the application of the proper measure of damages.[3]

Accordingly, we reverse that part of the judgment relating to damages and remand for a new trial on the issue of damages only.

*Tobias C. Tolzmann,* for Defendants-Appellants, Cross-Appellees.

*Daniel S. Ukishima,* for Plaintiff-Appellee, Cross-Appellant.

---

[3] This case is further complicated by the retirement of the trial judge before the cause was heard on appeal. We cannot, therefore, remand simply for further findings on the issue of damages. See In Re Application of Pioneer Mill Co., 53 Haw. 496, 497 P.2d 549 (1972).