WESCO REALTY, INC., an Arizona corporation, dba TIRE WAREHOUSE, Plaintiff-Appellant, *v.* WILLIAM MOOREHEAD CAMERON and EVE JOSIN CAMERON, Defendants-Appellees

NO. 6416

JULY 21, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from an order granting appellees' motion for directed verdict on appellant's claim at the end of appellant's case and from an order granting a motion for directed verdict in favor of appellees on Count I of appellees' counterclaim.

The question is whether there was sufficient evidence that the parties to the contract contemplated further negotiations as to essential terms to allow that issue to go to the jury.

Appellees were lessees of certain property on Kamehameha Highway in Aiea from Union Oil Company. Appellant operates a number of stores in and about Honolulu called "Tire Warehouse". In March and April of 1975, the parties engaged in negotiations looking toward appellant's leasing the subject property from the appellees. An offer was made to the appellant by the appellees on March 10, 1975. On April 7th, appellant countered with a letter offer together with a check for $1,000. On April 18, 1975, Appellee William M. Cameron accepted said letter offer. The parties understood that the appellant wanted the premises for a Tire Warehouse operation, that alteration to the improvements on the premises would be necessary for such an operation and that appellant would want to have signs, tire racks, etc. visible from the highway. The letter offer was silent as to these matters. It did provide that it was subject to final approval by Tire Warehouse's main office in Phoenix, Arizona. Such approval was obtained but there is a dispute in the evidence as to whether it was conditioned upon approval of the final lease document contemplated by the letter agreement.

On or about April 18th, the appellees took the letter offer to their attorney, Mr. Gelber, who proceeded to draft the formal sublease which is Exhibit E in evidence. This lease was turned over to appellant who delivered it to its local attorney and it was subsequently forwarded to Phoenix for approval. Meanwhile, a conversation on or about April 25, 1975 was had between Mr. Gelber, Mr. Cameron and Mr. Garcia, an employee of the appellant, with respect to the proposed improvements on the premises. There is a dispute

in the evidence as to what was said in that conversation as to whether Union Oil, as the overlying lessor, would or would not approve the proposed alterations to the improvements.

On May 2, 1975, Dean Holmes, an employee of the appellant, informed William Cameron that appellant was cancelling the agreement. At this point in time, appellant's officials in Phoenix had not yet reviewed the sublease. Appellees threatened to sue if the appellant did not go through with the agreement. Appellant then reviewed the sublease and wrote a letter dated May 8, 1975, purporting to cancel the agreement on the ground that the lease tendered did not conform to the letter of April 7, 1975.

There is testimony that Mr. Holmes discussed the matter with Mr. Cameron and pointed out objections to four provisions in the lease: those with respect to the right to mortgage the leasehold; those with respect to the right to make improvements; those with respect to the security deposit and those with respect to the guarantee. In this connection, it is noted that Exhibit E has a blank for the amount of the security deposit although there is testimony indicating that appellees were demanding $3,000. There is also a blank with respect to the name of the guarantor. None of the matters objected to had been specifically dealt with in the April 7th letter. There is testimony that after appellant stated it was going to cancel because of the objectionable matters there was a conversation in which Mr. Cameron offered to trade off the 90-day cancellation provision, which was included in the letter, for the security deposit, which was not in the letter, but which was included in the proposed sublease. There is also testimony by Mr. Friend to the effect that he understood that the appellees' position was that he must sign the lease as is or be sued.

Appellant contends that the parties in entering into the April 7th letter agreement contemplated further negotiations with respect to the other terms. The rule of law in this jurisdiction is clear. As was stated in *Francone v. McClay*, 41 Haw. 72 (1955) at page 78:

> There is little or no conflict of authority upon the general principle that where a contract is complete and

certain as to the essential and material terms, parts and elements of a lease, specific performance will be granted; nor if the contract to lease or the negotiations of the parties affirmatively disclose or indicate that *further* negotiations, terms and conditions are contemplated, the proposed lease is considered incomplete and incapable of being specifically enforced.

The same principle was adhered to by the Supreme Court of Hawaii in *Malani v. Clapp & Furuya,* 56 Haw. 507, 542 P.2d 1265 (1975).

The letter of April 7, 1975 standing alone certainly contains the essential elements of a contract under the rule in the cases cited. Moreover, under those cases, if it were proved by competent evidence that there are additional terms, covenants and conditions which are customarily inserted in such leases, no problem would be caused by the insertion of such usual terms, covenants and conditions in the formal sublease that was tendered to appellant subsequent to the April 7th letter. However, as *Francone, supra,* points out, in determining whether or not further negotiations, terms and conditions were contemplated by the parties, the trier of fact must also look to the negotiations of the parties to see whether such is affirmatively disclosed or indicated.

In this case, Appellee William Cameron's letter of March 10th, his testimony with respect to negotiations as to the modification of the premises, the Gelber-Cameron-Garcia conversation of April 25th, the form of sublease tendered by the appellees including the blanks contained therein, the conversation with respect to the possibility of trading off the already agreed to cancellation clause in the letter agreement against the security deposit provision in the tendered sublease, and the testimony of the appellant's witnesses provided enough evidence that the question of whether or not the parties contemplated further negotiations as to additional terms, covenants and conditions should have been allowed to go to the jury. As our Supreme Court has repeatedly stated:

" '[O]n motions for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to

the party against whom the motion is directed and if the evidence and inferences viewed in that manner are of such character that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, then the motion should be denied and the issue should be submitted to the jury.' "
[*Id.* at 145, 488 P.2d at 711.]

*Farrior v. Payton,* 57 Haw. 620, 626, 562 P.2d 779, 784 (1977). Accordingly, we reverse.

The parties having stipulated on the subject of damages, that issue need not be re-examined on remand. Depending on what evidence is introduced at re-trial, the trier of fact may be called on to pass on whether further negotiations were contemplated by the parties, whether there are usual covenants and conditions in commercial leases of the type here contemplated, whether the tendered sublease covenants and conditions were usual covenants and conditions, as well as who breached the contract and when. Of course, new evidence may raise other issues also.

Reversed and remanded for further proceedings consistent with this opinion.

*Michael F. O'Connor* for plaintiff-appellant.

*Barry Graczyk (Steven E. Kroll* on the brief) for defendants-appellees.